**SPERTUS, LANDES & JOSEPHS, LLP**
JAMES W. SPERTUS (Cal Bar No. 159825)
jspertus@spertuslaw.com
LINDSEY HAY (Cal Bar No. 311463)
lhay@spertuslaw.com
MARIO HOANG NGUYEN (Cal Bar No. 355543)
mnguyen@spertuslaw.com
1990 South Bundy Drive, Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:24-cv-06311-SPG-JC |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| v. | Date: November 20, 2024 |
| ANDREW LEFT, AND CITRON CAPITAL, LLC, | Time: 1:30 p.m. |
| Defendants. | Ctrm: 5C |
| | Judge: Hon. Sherilyn Peace Garnett |

*MEMORANDUM OF POINTS & AUTHORITIES*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................III

INTRODUCTION ...............................................................................1

LEGAL STANDARDS........................................................................2

   I.    Motions to Dismiss .................................................................2

   II.   Securities Fraud Claims .........................................................3

         A.    Duty ...............................................................................4

         B.    Materiality.....................................................................5

         C.    Falsity............................................................................9

         D.    Scienter .......................................................................10

DISCUSSION .....................................................................................10

   I.    None of the Alleged "Misrepresentations" Support a Fraud Claim...........................................................................10

         A.    Defendants Allegedly Misrepresent and Conceal Their Trading.......................................................11

         B.    Defendants Allegedly Misrepresent Trading Positions To Media .............................................13

         C.    Defendants Allegedly Trade Inconsistent With Citron's Opinions ............................................15

         D.    Defendants Allegedly Publish Recommendations Without Conducting Adequate Research ....................17

         E.    Defendants Allegedly Misrepresented That Mr. Left Never Received Compensation From Hedge Funds .............18

         F.    The Remaining Alleged Misrepresentations .............21

   II.   The First Amendment Bars The SEC's Fraud Theory .......................22

   III.  The SEC's Rulemaking By Enforcement Violates Due Process.........23

CONCLUSION ...................................................................................25

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*MEMORANDUM OF POINTS & AUTHORITIES*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.,*
   133 S. Ct. 2321 (2013) ............................................................................... 22

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1990) ........................................................................ 2

*Cavello Bay Reinsurance Ltd. v. Shubin Stein,*
   986 F.3d 161 (2d Cir. 2021) ........................................................................ 20

*Chiarella v. United States,*
   445 U.S. 222 (1980) ...................................................................................... 4

*Christopher v. SmithKline Beecham Corp.,*
   567 U.S. 142 (2012) .................................................................................... 25

*City of Chicago v. Morales,*
   527 U.S. 41 (1999) ...................................................................................... 23

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align
   Tech., Inc.,* 856 F.3d 605 (9th Cir. 2017) ............................... 7, 9, 13, 21

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,*
   752 F.3d 173 (2d Cir. 2014) ........................................................................ 20

*In re Cornerstone Propane Partners, L.P.,*
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) ................................................ 12, 15

*Espy v. J2 Glob., Inc.,*
   99 F.4th 527 (9th Cir. 2024) ........................................................................ 8

*In re Facebook, Inc. Sec. Litig.,*
   87 F.4th 934 (9th Cir. 2023) ................................................................... 9, 18

*Firefighters Pension & Relief Fund of the City of New Orleans v.
   Bulmahn,* 53 F. Supp. 3d 882 (E.D. La. 2014) ......................................... 7

*Frudden v. Pilling,*
   742 F.3d 1199 (9th Cir. 2014) ..................................................................... 22

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

iii

*Gates & Fox Co. v. Occ. Safety & Health Rev. Comm'n*,
   790 F.2d 154 (D.C. Cir. 1986)................................................................23

*Gebhart v. SEC*,
   595 F.3d 1034 (9th Cir. 2010) ...............................................................10

*Gen. Elec. Co. v. U.S. E.P.A.*,
   53 F.3d 1324 (D.C. Cir. 1995).........................................................23, 24

*GFL Advantage Fund, Ltd. v. Colkitt*,
   272 F.3d 189 (3d Cir. 2001) ....................................................................6

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
   63 F.4th 747 (9th Cir. 2023).............................................................9, 10

*Greenhouse v. MCG Cap. Corp.*,
   392 F.3d 650 (4th Cir. 2004) ...................................................................7

*Hockey v. Medhekar*,
   30 F. Supp. 2d 1209 (N.D. Cal. 1998).....................................................11

*Kalin v. Semper Midas Fund, Ltd.*,
   No. 22-16766, 2023 WL 8821325 (9th Cir. Dec. 21, 2023) ............................7

*Loper Bright Enterps. v. Raimondo*,
   144 S. Ct. 2244 (2024) ..........................................................................24

*Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc.*,
   39 F.4th 1092 (9th Cir. 2022) ................................................................14

*McGuire v. Dendreon Corp.*,
   267 F.R.D. 690 (W.D. Wash. 2010)...........................................................6

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) .........................................................................19, 20

*Nat'l Ass'n of Manufacturers v. SEC*,
   800 F.3d 518 (D.C. Cir. 2015)................................................................22

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015) ................................................................................4

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014)..................................................................11

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

iv

*MEMORANDUM OF POINTS & AUTHORITIES*

*Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268 (9th Cir. 2017)..................................................4, 5

*Riley v. Nat'l Fed'n of the Blind of No. Carolina, Inc.*, 487 U.S. 781 (1988) ...............................................................................22

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213 (C.D. Cal. 2015)...............................................3

*SEC v. Carter*, No. 8:16-cv-02070-JVS-DFMx, 2023 WL 9197565 (C.D. Cal. July 14, 2023)...........................................................................................5

*SEC v. Francisco*, 262 F. Supp. 3d 985 (C.D. Cal. 2017)..........................................21, 22

*SEC v. Jarkesy*, 144 S. Ct. 2117 (2024) .....................................................................24

*SEC v. Liu*, 549 F. Supp. 3d 1087 (C.D. Cal. 2021)...........................................19

*Shimono v. Harbor Freight Tools USA, Inc.*, No. 16-cv-1052-CAS-MRWx, 2016 WL 6238483 (C.D. Cal. Oct. 24, 2016).........................................................................................3

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)........................................................22

*Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018)..........................................................20

*In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182 (D. Nev. 1999) ..............................................5

*Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857 (7th Cir. 1995)...........................................................6

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)........................................................3

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003).......................................................3

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

v

*MEMORANDUM OF POINTS & AUTHORITIES*

*Wilson v. Merrill Lynch & Co.*,
   671 F.3d 120 (2d Cir. 2011) ................................................................................. 7

**Statutes**

15 U.S.C. § 77q ...................................................................................................... 4

15 U.S.C. § 78j ...................................................................................................... 4

**Other Authorities**

17 C.F.R. § 240.10b-5 ........................................................................................... 4

17 C.F.R. § 240.13f-2 .......................................................................................... 25

17 C.F.R. § 249.332 ............................................................................................. 25

Federal Rule of Civil Procedure 9 ...................................................... 3, 17, 21, 22

Federal Rule of Civil Procedure 12 ........................................................... 2, 21

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*MEMORANDUM OF POINTS & AUTHORITIES*

**INTRODUCTION**

Mr. Left[1] moves for dismissal under Rules 12(b)(6) and 9(b) because the Securities and Exchange Commission ("SEC") fails to allege a cognizable theory of fraud. The SEC alleges that Mr. Left's tweets and reports about companies "concealed his own financial motivations for issuing the publication[s] and his intention to capitalize on the price movements he created." (Compl. ¶ 85.) Allegedly, Mr. Left "le[d] [readers] to believe that he had long or short exposure in [a] target company" and then "*bought back* [] stock almost immediately after telling his readers to *sell*, and [] *sold* stock almost immediately after telling his readers to *buy*." (Compl. ¶ 6.) This omissions-based fraud theory is untethered to a disclosure duty, materiality, objective falsity, or scienter. At its core, the SEC alleges that Mr. Left did not honestly hold the opinions he published, and published them to profit from the stock price movements that would follow his publications.

The irony of this case is that it is the SEC, not Mr. Left, who alleges misleading half-truths requiring omitted facts to make them not misleading. The SEC quotes extensively from Citron's website, reports, and tweets, but strategically omits the disclaimers in each publication disclosing the very facts the SEC alleges were not disclosed: that Mr. Left holds positions in the securities he discusses, actively trades them without regard to stated opinions, owes no disclosure duty to readers, and will not update publications once released. The SEC also creates the appearance that Mr. Left's opinions were false by alleging that "[i]n 21 of the 26 [] Publications, Left [] included a target price that purported to represent the price at which [he] thought the stock would trade" only to "trade[] at prices far from the

---

[1] The SEC concedes Defendants Andrew Left and Citron Capital, LLC (collectively, "Mr. Left"), and Citron Research are all the same. (Compl. ¶¶ 35–38.) Mr. Left "had ultimate responsibility for . . . Citron Research's publications" and traded only "his own money" through his personal account and Citron Capital's account. (*Id.* ¶¶ 35, 37.)

1

*MEMORANDUM OF POINTS & AUTHORITIES*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

targets." (Compl. ¶ 87.) But the SEC fails to disclose that those published price targets were correct almost every time.

The SEC also alleges that Mr. Left lied about a statement he in fact never made: "he had never received compensation from hedge funds *in connection with* publishing trading recommendations." (Compl. ¶ 147.) That allegation is then followed by 35 paragraphs alleging profit sharing arrangements between Mr. Left and two funds. The actual statement Mr. Left made is pled elsewhere in the Complaint, and that statement was that he has "never been compensated by a third party *to publish research*." (Compl. ¶ 152.) Those two statements are materially different, and the SEC has not alleged either fund paid Mr. Left *to publish research*.

For purposes of this motion to dismiss, the Court must accept all material allegations as true, but it may consider certain omitted facts through doctrines intended to prevent deceptive pleading. When the omitted disclosures are included, the misstatements corrected, the historical stock prices compared to the allegations made, and the immaterial allegations ignored, the SEC's theory of fraud falls apart. The Complaint should also be dismissed for additional reasons: It applies domestic securities laws extraterritorially, contravenes the First Amendment's prohibition on compelled speech, and violates due process principles of fair notice by engaging in rulemaking through an enforcement action. For all these reasons, the Complaint fails to state a claim.

## LEGAL STANDARDS

### I.   Motions to Dismiss

A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6), when it lacks a cognizable legal theory or sufficient factual support of a cognizable legal theory. (*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).) When alleging claims "grounded in fraud," a complaint must also plead "with particularity" the circumstances constituting fraud under Rule 9(b). (*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (quoting Fed. R.

2

*MEMORANDUM OF POINTS & AUTHORITIES*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

Civ. P. 9(b)).) A plaintiff must "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false.'" (*Shimono v. Harbor Freight Tools USA, Inc.*, No. 16-cv-1052-CAS-MRWx, 2016 WL 6238483, at *5 (C.D. Cal. Oct. 24, 2016) (quoting *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).)

"A court may[] consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment[,]" including public records on a government website or the website of a party, historic stock prices of publicly traded companies, court records, news articles, and press releases. (*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see, e.g.*, *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1230–32 (C.D. Cal. 2015).)

## II.    Securities Fraud Claims

The SEC alleges five claims and seeks disgorgement, penalties, an officer or director bar, and a permanent injunction prohibiting Mr. Left from purchasing or selling a security for five trading days after a publication about that company. (Compl. ¶¶ 43–45.) The four substantive claims prohibit (in interstate commerce): (1) either (a) making any untrue statement of a material fact, or omitting material facts necessary to make the statements made not misleading under the circumstances in which they were made, or (b) employing any device, scheme, or artifice to defraud, or engaging in any practice or course of business which operates as a fraud or deceit; (2) in connection with the purchase or sale of any security registered on a national securities exchange; (3) with scienter; and (4) the receipt of money or property by means thereof. (*See* 15 U.S.C. §§ 77q(a), 78j(b); 17 C.F.R. § 240.10b-5.)

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

3

1

## A.    Duty

2      An omissions-based fraud theory requires a duty to disclose the allegedly

3  omitted material facts. "Absent a duty to disclose, an omission does not give rise to

4  a cause of action" for securities fraud. (*Retail Wholesale & Dep't Store Union Loc.*

5  *338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017) (citing

6  *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)); *see Chiarella v. United*

7  *States*, 445 U.S. 222, 234–35 (1980) ("When an allegation of fraud is based upon

8  nondisclosure, there can be no fraud absent a duty to speak.").) The duty to disclose

9  is limited only to those facts necessary to make an opinion rendered not misleading.

10  (*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S.

11  175, 186–87 (2015).) Whether an undisclosed fact renders an opinion misleading

12  "depends on the perspective of a reasonable investor: The inquiry [] is objective."

13  (*Id.*)

14      Mr. Left's disclaimers informed readers he owes them no duties. In

15  Paragraphs 24, 29, 39, and 40, the Complaint quotes extensively from Mr. Left's

16  website, but strategically omitted its disclosure:

17      In no event should Citron Research be liable for any direct or indirect
       trading losses caused by any information available on this site. . . .

18      **Citron Research makes no representations, and specifically**
19      **disclaims all warranties, express, implied, or statutory, regarding**
       **the accuracy, timeliness, or completeness of any material**
20      **contained in this site.** You should seek the advice of a security
       professional regarding your stock transactions.

21      **Citron Research does not guarantee in any way that it is**
22      **providing all of the information that may be available.** We
       recommend that you do your own due diligence before buying or
23      selling any security.

       **The principals of Citron Research most always hold a position in**
24      **any of the securities profiled on the site. Citron Research will not**
       **report when a position is initiated or covered.** Each investor must
25      make that decision based on his/her judgment of the market.

26  (RJN, Ex. A: Website Disclaimer (Nov. 3, 2017) (emphases added).)

27

28

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

4

The SEC likewise references and quotes from numerous Citron reports and letters, such as the July 31, 2019, Citron report referenced on pages 4, 18, 32, 37, and 50 of the Complaint, while again strategically omitting their disclosure:

> *Citron Related Persons . . .* **have a position (long or short) in one or more of the securities** *of a Covered Issuer* **(and/or options, swaps, and other derivatives related to one or more of these securities),** *and therefore* **may realize significant gains in the event that the prices of a Covered Issuer's securities decline or appreciate.** *. . . . Citron Related Persons* **may continue to transact in Covered Issuers' securities for an indefinite period after an initial report** *on a Covered Issuer, and* **such position(s) may be long, short, or neutral at any time hereafter regardless of their initial position(s) and views as stated in the Citron research.** *Neither Citron Research nor Citron Capital will update any report or information to reflect changes in positions that may be held by a Citron Related Person.*
>
> *. . . . You understand and agree that Citron Capital does not have any investment advisory relationship with you* **or does not owe fiduciary duties to you**. *. . .*

(RJN, Ex. B: Citron Res. Rpt. (July 31, 2019) (emphases added).) These omitted disclosures preclude the SEC from alleging a cognizable omissions-based fraud theory because omissions cannot be fraudulent without a disclosure duty.

## B.    Materiality

"To establish liability for a misstatement or omission, the fact misstated or omitted must be material." (*SEC v. Carter*, No. 8:16-cv-02070-JVS-DFMx, 2023 WL 9197565, at *7 (C.D. Cal. July 14, 2023) (citing *SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007)).) "The materiality of the misrepresentation or an omission depends upon whether there is 'a substantial likelihood that [it] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available for the purpose of decision-making by stockholders concerning their investments." (*Retail Wholesale*, 845 F.3d at 1274 (citation omitted).) "[W]hen considering a statement's materiality, a district court must not 'attribute to investors a childlike simplicity but rather . . . determine whether a reasonable investor would have considered the omitted information significant at the time.'" (*In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1198 (D.

5

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

Nev. 1999) (quoting *Hillson Partners L.P. v. Adage, Inc.*, 42 F.3d 204, 213 (4th Cir. 1994)).)

The materiality of omitted information can rarely be found without a publication of untruthful information. "[C]onveying negative information about a firm does not constitute market manipulation unless the information is untruthful. Indeed, legitimate short sales often convey negative information about a company insofar as short sales suggest that a stock's price is overvalued, but that does not mean that such sales distort the market. To the contrary, short selling can help move an overvalued stock's market price toward its true value, thus creating a more efficient marketplace[.]" (*GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 208 (3d Cir. 2001).) Nor must personal trading strategy align with published opinions. (*See id.* at 210 ("[A] court reasonably could infer that [defendant] not only sought to protect itself, but also endeavored to reap further profit from the stock's declining prices by selling short. To infer that these 'premature' short sales were executed to manipulate prices, however, would be an unreasonable leap.").)

The SEC alleges Mr. Left held himself out to the public as "activist 'short publisher,'" and the primary purpose of his publications "*has always been to provide truthful information in an entertaining format to the investing public.*" (Compl. ¶¶ 27, 40.) Mr. Left's publications inform investors of his opinions about wrongly priced stocks due to fraud, valuation errors, or a misunderstood business model. (Compl. ¶ 13 ("[H]e releases tweets and reports purporting to expose frauds or other problematic conduct at target companies.").) Reasonable investors know, even without reading Mr. Left's published disclaimers, that his strategy is to realize gains from price corrections. "That is what short sellers do: they bet on a declining market, trusting that they have better information or better instincts than other traders [and] [t]here is nothing unlawful about trading on an information advantage, provided that it is not based on inside information." (*Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 860 (7th Cir. 1995); *see McGuire v. Dendreon Corp.*,

6

267 F.R.D. 690, 695 (W.D. Wash. 2010) ("Investors who sell short [] realize their profit only if there is a decline in the value of the asset in the interim[.]").) The SEC's allegation that Mr. Left's *personal trading strategy* is material to his publication of truthful information misstates the standard for materiality. (*See Greenhouse v. MCG Cap. Corp.*, 392 F.3d 650, 658 (4th Cir. 2004) (affirming dismissal of securities fraud case based on a CEO's lie about obtaining a college degree because his "educational background could not be said to alter the 'total mix' of [] information.").)

By informing his readers that he is actively trading the securities he tweets and reports about, his trading strategy is immaterial and cannot be material to the information published. "'[W]hether an omission makes an expression of opinion misleading always depends on the context,' which includes 'all its surrounding text, including hedges, disclaimers, and apparently conflicting information.'" (*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017) (hereinafter, *Dearborn*) (quoting *Omnicare*, 575 U.S. at 1330)). Mr. Left tells his readers his opinions frequently change without notice, they will not be updated after they are published, and to assume he is trading without regard to his published opinions. These disclosures preclude a finding that his trading is material to his publications. (*See Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 132, 138 (2d Cir. 2011) (affirming dismissal of securities fraud claim because the court was "unable to agree with the SEC's application of the legal principles governing [defendant's] disclosures even under the generous standard of deference that [plaintiff] urges.").)[2]

---

[2] Investors are responsible for obtaining and reviewing disclosures about their investments. *See Kalin v. Semper Midas Fund, Ltd.*, No. 22-16766, 2023 WL 8821325, at *2 (9th Cir. Dec. 21, 2023) ("Reading Defendants' disclosures together, any reasonable investor would have understood that the Fund's hedging vehicles were not guaranteed to substantially or fully offset losses."); *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 53 F. Supp. 3d 882,

7

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1    The Complaint is modeled on a scalping pump-and-dump template, but there
2    is no precedent for a scalping case absent allegations of the publication of false
3    information about the issuer of the security. The SEC does not allege Mr. Left ever
4    published false information about the issuer of a security, but rather that his price
5    target opinions were false, which historical stock price data demonstrate proved
6    mostly true. The SEC alleges "[i]nvestors often sold their stock in response to Left
7    and Citron Research's short recommendations," and "bought stock in response to
8    Left and Citron Research's long recommendations." (Compl. ¶¶ 45, 47.) But that
9    does not support fraud by omission absent allegations that materially false
10   information was published. Mr. Left's trading strategies were not material to his
11   published opinions. There are also no allegations that Mr. Left's personal trading
12   affected stock prices. Many scalping cases involve trading by publishers to imply
13   liquidity in thinly traded penny stocks, but the companies that were the subject of
14   most publications referenced in the Complaint were multibillion-dollar companies
15   like Tesla, Facebook, Nvidia, Twitter, General Electric, American Airlines, Roku,
16   Beyond Meat, and others. The SEC's allegations that Mr. Left's omission of
17   personal trading strategy from publications about these companies manipulated the
18   prices of these multibillion-dollar companies is absurd. Indeed, when specifically
19   evaluating Mr. Left's publications, the Ninth Circuit has held that although "Citron
20   [is a] well-known short-seller firm[]," a "reasonable investor reading [its] posts
21   would likely have taken their contents with a healthy grain of salt" because they
22   were authored by a "short-seller[] who had a financial incentive to convince others
23   to sell," and included a disclaimer that the author made "no representation as to the
24   accuracy or completeness of the information set forth." (*Espy v. J2 Glob., Inc.*, 99
25   F.4th 527, 541 (9th Cir. 2024) (internal citations and quotation marks omitted).)

26   ────────────────
27   902–03 (E.D. La. 2014) ("[A] reasonable investor is presumed to have read
     prospectuses, quarterly reports *and other information relating to their*
28   *investments*").

*MEMORANDUM OF POINTS & AUTHORITIES*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

## C.    Falsity

"In the securities fraud context, statements and omissions are actionably false or misleading if they 'directly contradict what the defendant knew at that time,' or 'create an impression of a state of affairs that differs in a material way from the one that actually exists.'" (*In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 948 (9th Cir. 2023) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018); and then quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).) "In determining whether a statement is misleading, the court applies the objective standard of a 'reasonable investor.'" (*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 764 (9th Cir. 2023) (quoting *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021)).) Accordingly, "liability is not necessarily established by demonstrating that 'an issuer knows, but fails to disclose, some fact cutting the other way,' because '[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts.'" (*Dearborn*, 856 F.3d at 615 (quoting *Omnicare*, 575 U.S. at 1329).)

"The falsity analysis is slightly different when the challenged statements contain opinions." (*Glazer*, 63 F.4th at 764.) The Ninth Circuit has "establishe[d] three different standards for pleading falsity of opinion statements":

> **First**, when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that "the speaker did not hold the belief she professed" and that the belief is objectively untrue. **Second**, when a plaintiff relies on a theory that a statement of fact contained within an opinion statement is materially misleading, the plaintiff must allege that "the supporting fact [the speaker] supplied [is] untrue." **Third**, when a plaintiff relies on a theory of omission, the plaintiff must allege "facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."

*Dearborn*, 856 F.3d at 615–16 (internal citations omitted).) The Complaint does not allege falsity in a manner that meets this standard, as discussed below for each security referenced in the Complaint.

9

### D.    Scienter

"[T]he SEC is required to 'show that there has been a misstatement or omission of material fact, made with scienter.'" (*Gebhart v. SEC*, 595 F.3d 1034, 1040 (9th Cir. 2010) (quoting *Ponce v. SEC*, 345 F.3d 722, 729 (9th Cir. 2003)).) "'Scienter' as used in the federal securities laws means the 'intent to mislead investors' or deliberate recklessness to 'an obvious danger of misleading investors.'" (*Glazer*, 63 F.4th at 765 (quoting *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053, 1059 (9th Cir. 2014)).) "Deliberate recklessness is a higher standard than mere recklessness and requires more than a motive to commit fraud." (*Id.* (quoting *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016)).) "Rather, 'deliberate recklessness is an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" (*Id.* (same).) "Scienter, however, is a subjective inquiry. It turns on the defendant's actual state of mind." (*Gebhart*, 595 F.3d at 1042 (citing 8 Louis Loss & Joel Seligman, *Securities Regulation* 3676 (3d ed. 2004)).) "Thus, although [courts] may consider the objective unreasonableness of the defendant's conduct to raise an inference of scienter, the ultimate question is whether the defendant knew his or her statements were false, or was consciously reckless as to their truth or falsity." (*Id.* (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976)).) Close inspection of the publications quoted in the Complaint and the accuracy of Mr. Left's target price opinions defeat the SEC's allegations of scienter, because every publication about a company was true.

## DISCUSSION

### I.    None of the Alleged "Misrepresentations" Support a Fraud Claim

After devoting the first 17 pages of the Complaint to general allegations about Mr. Left and his trading behavior—without alleging that he ever knowingly

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1  published an untrue fact about a company—the SEC then pleads statements it

2  alleges support its fraud claims, but they in fact defeat them.

3  **A.    Defendants Allegedly Misrepresent and Conceal Their Trading**

4  Under the heading "Defendants Misrepresent and Conceal Their Trading,"

5  the SEC includes allegations about NVTA and ROKU. (Compl. at 18:1.)

6  **1.    Invitae Corp. (NVTA)**

7  The SEC alleges Mr. Left made two misrepresentations about NVTA. First,

8  in a July 17, 2019, investor letter, stating: "*on the long side we're most excited*

9  *about our position in Invitae (NVTA). . . . [W]e continue to add to our position at*

10  *current levels. . . . and expect the stock to trade to $100 in the next 24 months.*"

11  (Compl. ¶ 91.) Second, on July 31, 2019, he tweeted he was "*certain that Invitae is*

12  *on its way to $100*" and "*will continue to stay long until the stock hits at least $65*

13  *as we believe it is on its way to $100.*" (Compl. ¶ 94.)

14  Neither alleged misrepresentation is false or supports the SEC's theory. The

15  allegation that Mr. Left "sold shares of NVTA between July 18 and July 25" does

16  not render materially false his July 17 statement "*we continue to add to our position*

17  *at current levels*" because the SEC alleges Mr. Left established "long exposure" in

18  NVTA before making that July 17 statement. (Compl. ¶¶ 90–92.) Mr. Left's July 31

19  statement indicating he "*will continue to stay long until the stock hits at least $65*"

20  (Compl. ¶¶ 94–95) is not rendered materially false by subsequent trading activity

21  because "plaintiffs cannot plead 'fraud by hindsight,' in which later events are used

22  to support the falsity of earlier statements." (*Hockey v. Medhekar*, 30 F. Supp. 2d

23  1209, 1213 (N.D. Cal. 1998).) Importantly, the qualifiers "we expect" and "we

24  believe" defeat the fraud allegations because they fall short of the standard of

25  objective falsity required in a securities fraud case. (*See Or. Pub. Emps. Ret. Fund*

26  *v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) (affirming dismissal because

27  the misrepresentations "were subjective and preceded by qualifiers, such as 'We

28  believe.'").)

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

11

*MEMORANDUM OF POINTS & AUTHORITIES*

### 2.    **Roku, Inc. (ROKU)**

The SEC alleges Mr. Left acquired short exposure in ROKU on January 8, 2019, before he "encouraged his readers to sell their stock" by tweeting:

> *We initially went long $ROKU at $35. However, have to recognize when the story has changed. APPLE TEAMING UP WITH SAMSUNG, ROKU CEO selling last week, and short interest at lows. Risk/reward no longer there. Expect big retracement. ROKU stock is uninvestable now.*

(Compl. ¶¶ 99–100.) The SEC alleges Mr. Left "began buying back shares of ROKU" within minutes of his tweet and exited his position that day, despite calling the stock "uninvestable." (Compl. ¶ 101.) But the only way to exit a short position is to cover the short by purchasing shares. (Compl. ¶ 21.) Any implication that Mr. Left traded inconsistently with this published opinion misstates his opinion. Contrary to the SEC's claim that Mr. Left "encouraged his readers to sell their stock," the tweet neither made a recommendation, nor said anything about Mr. Left's trading strategy. The term "uninvestable" is not a misrepresentation because vague and unspecific statements "are 'not capable of objective verification,' and 'lack[] a standard against which a reasonable investor could expect them to be pegged.'" *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005) (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)).

The SEC then alleges a second tweet the same day was "materially false and misleading and designed to further Citron Capital's reputation as an independent publication" because Mr. Left "had just profitably traded" around his first tweet. (Compl. ¶ 103.) The second tweet, made *after* Mr. Left exited his short position, stated:

> *To clarify, we are watching $ROKU from the side After successfully shorting ROKU as it traded as high as $50 in late 2017, we reversed our position at $35 last year. With Apple teaming up with Sams, LG, and Vizio investors must consider the risk to the bigger story.*

*MEMORANDUM OF POINTS & AUTHORITIES*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

(Compl. ¶ 102.) This tweet is not false, because Mr. Left had exited his position and was indeed "*watching $ROKU from the side*." (Compl. ¶ 102.)

### B. Defendants Allegedly Misrepresent Trading Positions To Media

Under a heading about misrepresenting trading positions in media interviews, the SEC alleges false statements about CRON and BYND. (Compl. at 20:9–10.)

### 1. Cronos Group, Inc. (CRON)

The SEC alleges Mr. Left, on August 30, 2018, "sent a tweet to his readers recommending that they sell CRON" as follows: "*$CRON tgt price $3.5. Everything that is contaminated about the Cannabis space. ALL HYPE with possible securities fraud.*" (Compl. ¶ 111.) During a CNBC interview, the interviewer asked "*are you just as short the stock right now as you were at the beginning of the day,*" to which Mr. Left responded that he "*took a small size position off today but I am still extremely short the stock*" and opined the stock would trade at $3.50. (*Id.* ¶ 113.) The SEC alleges this was a misrepresentation "because, by the time of that interview, Left had exited more than 75% of his short exposure at well above $3.50, despite representing to his readers that this was the true valuation of the company." (Compl. ¶ 114.)

Despite the SEC's characterization of Mr. Left's statements as a "recommendation," however, the quoted statements do not make any trading recommendations or representations about Mr. Left's future trading strategy. His statement that CRON stock would fall to $3.50 is an opinion that the SEC does not allege was false. Nor can the allegation that Mr. Left sold some of his position before the stock reached $3.50 support a fraud claim absent a statement about future trading strategy. To adequately plead that Mr. Left's opinion on CRON stock's value was a misrepresentation, the SEC "must allege both that 'the speaker did not hold the belief []he professed' and that the belief is objectively untrue." (*Dearborn*, 856 F.3d at 616 (quoting *Omnicare*, 575 U.S. at 1327).) The SEC has done neither.

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*MEMORANDUM OF POINTS & AUTHORITIES*

Mr. Left opined that CRON stock was "*overhyped*" with "*possible securities fraud.*" (Compl. ¶¶ 111–12.) The alleged private communication to his research collaborator stating "*[i]t's OK to be wrong*" does not demonstrate Mr. Left did not hold the belief he professed. (Compl. ¶107.) In fact, after his statement, Cronos Group, Inc., self-reported "potential violations of the federal securities laws" to the SEC. (RJN, Ex. C: *In the Matter of Cronos Grp. Inc.*, SEC Release No. 4357, 2022 WL 14796615, at *8 (Oct. 24, 2022).) Further, the historic price data for CRON reveals that it fell to $3.56 a share on January 20, 2022, which forecloses the inference of falsity or scienter. (RJN, Ex. D: CRON Historic Stock Prices.)

Mr. Left's statement that he "*took a small size position off today*" and was "*still extremely short the stock*" also cannot support a fraud claim. The SEC alleges the statement was false because Mr. Left was still short the stock but "exited more than 75% of his short exposure" when he made the statement. Fraud based on a misrepresentation cannot hinge on the words "*small*" and "*extremely*" because such vague, generic terms like "huge," "significant[]," and "tremendous" are not "objectively verifiable" or "the kind of precise information on which investors rely [w]hen valuing corporations." (*Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1099 (9th Cir. 2022) (internal citations and quotation marks omitted).) The SEC's allegations about CRON fail to support a fraud claim.

### 2.    Beyond Meat, Inc. (BYND)

After building short exposure, the SEC alleges that on May 17, 2019, Mr. Left issued a "tweet on BYND recommending that Citron Research readers sell the stock," stating: "*$BYND has become Beyond Stupid*" and "*We expect $BYND to go back to $65 on earnings.*" (Compl. ¶¶ 118–19.) Within minutes, the SEC alleges he "exited the majority of his short exposure in BYND" and "completely covered" Citron Capital's short position. (Compl. ¶ 121.) When a reporter emailed later that day asking if Mr. Left held a position in BYND, he allegedly responded that he "*shorted some today.*" (Compl. ¶ 122.) The SEC alleges this statement "was

14

*MEMORANDUM OF POINTS & AUTHORITIES*

materially false and misleading because Left had exited the majority of his short exposure and Citron Capital had already sold all of its short exposure." (Compl. ¶ 123.)

Mr. Left indeed "shorted" BYND stock that day, and exiting "a majority of his short exposure in BYND" that day does not render the statement false. (Compl. ¶¶ 121–22.) To the extent that the SEC's claim is based on the word "some," such vague and nonspecific terms do not meet the standard for material falsity because they "are 'not capable of objective verification,' and 'lack[] a standard against which a reasonable investor could expect them to be pegged.'" (*In re Cornerstone*, 355 F. Supp. 2d at 1087 (quoting *Grossman*, 120 F.3d at 1119)).

Furthermore, a statement to a reporter "in advance of an article CNBC planned to release" cannot support a fraud claim without an allegation that the reporter published the statement, which is noticeably missing. (Compl. ¶¶ 123–24.) The published article did not include the alleged misrepresentation, and instead reported that Mr. Left "confirmed in an email to CNBC that he took a short position in Beyond Meat Friday." (RJN, Ex. E: Thomas Franck, *Short seller says Beyond Meat hype is 'beyond stupid,' places bet against the shares*, CNBC (May 17, 2019).)

The SEC also fails to allege Mr. Left's opinion about BYND pricing was false, nor can it. Historic price data confirms that BYND stock did in fact "*go[] to 100*" on May 30, 2019, before "*go[ing] back to $65*" on March 16, 2020. (RJN, Ex. F: BYND Historic Stock Prices.) There was nothing false about Mr. Left's opinion.

### C.    Defendants Allegedly Trade Inconsistent With Citron's Opinions

Under the heading "Defendants Traded Inconsistent With Citron Research's Recommendations to the Market," the SEC alleges that facts about XL and AAL without pleading duty, materiality, falsity, or scienter. (Compl. at 23:1–2.)

### 1.    <u>XL Fleet Corp. (XL)</u>

After establishing a long position in XL, the SEC alleges that on December

15

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

23, 2020, Mr. Left tweeted:

> *Citron long $XL tgt $60. TAM of $XL over $1T. Electrification as a Service (EaaS) will be massive . . . more than twice $QS and $LAZR combined. Blue chip customer base with FedEx, Coke, Pepsi, DHL and many more. SPACS always cautious-this story has great Risk/Reward.*

(Compl. ¶¶ 125–26.) The SEC does not allege this was a misrepresentation, nor can it. The SEC alleges that "Left and Citron Capital held long positions of XL" before Mr. Left tweeted "*Citron long $XL.*" (Compl. ¶ 125.) The tweet does not make a recommendation or include any representation about Mr. Left's future trading strategy. Instead, the SEC alleges the misrepresentation came *five months later* in May 2021, when Mr. Left responded privately to an investor through an unspecified medium saying that he "*fired the analyst that made th[e] call.*" (Compl. ¶ 132.) This does not render Mr. Left's prior publication false. As the SEC later discovered, Mr. Left's opinion was wrong because XL made "materially misleading" statements in SEC filings from September 2020 until January 2021. (RJN, Ex. G: *In the Matter of Spruce Power Holding Corp.*, SEC Release No. 11247, 2023 WL 6388537, at *1–2 (Sept. 28, 2023).) This fact defeats any inference of material falsity.

## 2. American Airlines Group, Inc. (AAL)

The SEC alleges Mr. Left issued two tweets about AAL on June 5, 2020:

> *$AAL Back to $10 Robinhood traders have 0 idea what they buying. Balance sheet is upside down. Unencumbered assets worth far less than current price. The reason why Buffett fully exited lower. They don't teach finance in the Sherwood Forest.*

> *$AAL. To clarify previous tweet the 25k new users on Robin Hood who bought stock at $19 must know more about airlines than Buffet who sold the stock at $11. Send your resumes to Omaha. Expect stock to trade back to $10.*

(Compl. ¶¶ 135–36.) The SEC does not allege how these tweets are false, which contravenes Rule 9(b)'s requirement to plead fraud with particularity. Rather, the SEC alleges "Left and Citron Capital did not intend to hold the positions beyond that day, nor did they intend to hold their positions to a price near the $10 price

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

target." (Compl. ¶ 139.) But Mr. Left never said he would. Furthermore, the historic price data demonstrates AAL stock subsequently traded at $10.98 on July 10, 2020. (RJN, Ex. H: AAL Historic Stock Prices.)

### D. Defendants Allegedly Publish Recommendations Without Conducting Adequate Research

Next, the SEC alleges that on December 18, 2020, Mr. Left tweeted:

> *Getting emails about shorting $VUZI. NO WAY we would short this flyer. Small market cap with story that is tied to 5G, $AMZN and $PLUG and Covid. There has to be easier pickings...**still doing research**. Risk/Reward easier on other high flyers.*

(Compl. ¶ 142 (emphasis added).) The SEC alleges this was a misrepresentation because Mr. Left's private communications demonstrate that he "had not actually done research on whether VUZI was an appropriate investment to recommend," and "even after receiving research that the company was not a good investment" from his analyst, Mr. Left "did not remove the tweet from Citron Research's platform, nor did he communicate to the market that he did not have the conviction to recommend VUZI as a long investment." (Compl. ¶¶ 143–45.)

The VUZI allegations highlight the absurdity of the SEC fraud theory. The SEC itself alleges he "established long positions" in the stock. (Compl. ¶ 141.) Although the SEC alleges the tweet was false because Mr. Left "had not actually done research on whether VUZI was an appropriate investment to recommend," the tweet informed readers he was "*still doing research.*" (Compl. ¶¶ 142–43.) The SEC further alleges Mr. Left "did not remove the tweet from Citron Research's platform, nor did he communicate to the market that he did not have the conviction to recommend VUZI as a long investment," but it does not allege a duty to disclose a subsequently changed opinion. (Compl. ¶ 143.) The tweet does not "'directly contradict what the defendant knew at that time,' or 'create an impression of a state of affairs that differs in a material way from the one that actually exists.'" (*In re Facebook*, 87 F.4th at 948 (citations omitted).) More importantly, the disclosures

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

on Mr. Left's website linked to his Twitter account informed readers he would not update if his opinions changed after publication.

### E.    Defendants Allegedly Misrepresented That Mr. Left Never Received Compensation From Hedge Funds

In a series of allegations spanning five pages, the SEC quilts together publications about GE, NXTTF, and IGC to allege that Mr. "Left falsely told Citron Research readers that he had never received compensation from hedge funds *in connection with* publishing trading recommendations" to "perpetuate the market's view that Citron Research was an independent short publisher[.]" (Compl. at 26:8–13 (emphasis added).) But the SEC mischaracterizes his words, which were that he has never been compensated by a third party "*to publish research.*" (Compl. ¶ 152.) Therefore, it is the SEC that misstated what Mr. Left said, and not Mr. Left who misstated his relationships with certain funds. The SEC does not allege Mr. Left was ever paid *to publish research*, and he never was.

### 1.    General Electric, Co. (GE)

The SEC alleges that on August 16, 2019, Mr. Left issued a tweet and report stating:

> *Citron took the opportunity to buy [GE] stock.*
>
> *[I]n 18 years of publishing, **we have never been compensated by a third party to publish research**. More important, compensation tied to the 'success of a trade' would not pass internal compliance nor would it pass compliance of any fund that Citron would collaborate with on ideas.*

(Compl. ¶¶ 149, 152 (emphasis added).) The SEC first alleges the statement about buying GE stock was false because he "had already entered a limit order to sell GE before issuing his commentary on GE and completely sold his GE stock within sixty-five minutes of telling the market he had a long position." (Compl. ¶ 156.) The SEC then alleges that the "statement about never receiving compensation from a hedge fund was materially false and misleading," because he received "trading profits" from two funds. (Compl. ¶¶ 154–55.)

18

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

The first alleged misrepresentation is true as alleged on the face of the Complaint, because "before releasing the commentary, Left purchased GE stock[.]" (Compl. ¶ 150.) The second alleged misrepresentation is in fact a misrepresentation by the SEC. Mr. Left's actual statement was that he has "*never been compensated by a third party **to publish research**.*" (Compl. ¶¶ 147, 152 (emphases added).) The SEC alleges falsity because: "Anson Advisors agreed to pay Left a *share of its fund's profits* from its short position in Namaste," and "Hedge Fund Two agreed to pay Citron Capital *a percentage of the alpha* for . . . the trades." (Compl. ¶¶ 159, 168, 179 (emphases added).) Neither of these allegations support a claim that Mr. Left was paid "*to publish research.*"

## 2.    Namaste Technologies, Inc. (NXTTF)

The shares in Namaste that Anson, a Canadian fund, borrowed for Mr. Left are traded on the Canadian exchange—outside of the SEC's jurisdiction. The SEC repeatedly refers to the security as "Namaste," rather than by its ticker symbol, as it does for other securities referenced in the Complaint. This distinction reveals the SEC's concealment of its knowledge that Namaste is a foreign security. The Supreme Court has made clear that domestic securities laws "reach[] the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." (*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 273 (2010).)[3] Domestic securities laws focus "not upon the place where the deception originated, but upon purchases and sales of securities in the United States." (*Id.* at 266.) "[I]f the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible

---

[3] Although *Morrison* discussed Section 10(b), its reasoning has been applied equally to Section 17(a). (*See SEC v. Liu*, 549 F. Supp. 3d 1087, 1091 n.3 (C.D. Cal. 2021) (citing *United States v. Sumeru*, 449 F. App'x 617, 621 (9th Cir. 2011)).)

*MEMORANDUM OF POINTS & AUTHORITIES*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

extraterritorial application regardless of any other conduct that occurred in U.S. territory." (*Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 166 (2d Cir. 2021) (quoting *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 337 (2016)).)

The SEC alleges that "Namaste's securities [are] traded on the **Canadian Securities Exchange** under the symbol **'N,'** and also traded as a penny stock in the United States under the symbol 'NXTTF.'" (Compl. ¶ 158 (emphasis added).) Namaste's dual listing as a penny stock does not confer SEC jurisdiction over the Canadian shares traded on the Canadian exchange, which Anson, a Canadian fund, borrowed for Mr. Left when he could not find shares to borrow in the United States.[4] (Compl. ¶¶ 16–17.) The SEC then alleges Mr. Left issued two tweets on September 14, 2018:

> "Namaste **$N Canada.** Some cannabis stocks are overvalued, and some are total jokes. This is a joke Drop it like its hot' after the pledge party **prohibits listing in US**, downside: 80%. That .50"

> "**$N, Canada.** urgent update: **Quebec** newspaper highlights Namaste's illegal activities and **Quebec** investigation in **$N** for violation of laws. Tilray quickly drops **$N**, shareholders are next."

(Compl. ¶¶ 162–63 (emphases added).) The SEC also alleges Mr. Left made misrepresentations "[i]n a televised BNN Bloomberg interview" on September 25, 2018. (Compl. ¶ 165.) Both tweets refer to the ticker symbol "N" for Namaste's Canadian securities, and BNN is the Canadian counterpart of Bloomberg News.

---

[4] Merely referencing a security's dual listing as a "penny stock" in the United States does not support extraterritorial application of domestic securities laws. (*See Stoyas v. Toshiba Corp.*, 896 F.3d 933, 947, 952 (9th Cir. 2018) (finding the complaint "d[id] not sufficiently allege a domestic violation of the Exchange Act" because the court was not "convince[d] [] that OTC Link is an 'exchange' under the Exchange Act."); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179–80 (2d Cir. 2014) ("Under plaintiffs' so-called 'listing theory,' the fact that the relevant shares were cross-listed on the NYSE brings them within the purview of Rule 10(b) . . . . We conclude that . . . the 'listing theory' is irreconcilable with *Morrison* read as a whole[.]" (footnote omitted)).)

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

20

*MEMORANDUM OF POINTS & AUTHORITIES*

### 3.    India Globalization Capital, Inc. (IGC)

The SEC alleges Mr. Left issued two tweets on October 2, 2018:

*$IGC. If you are able to short, it is a gift. No product. All hype. Raised Money 2 weeks ago at $1.15 Finger traders will get burned. This hype stock is the poster child of a cannabis bubble. Always cautious but nothing but air. Could write pages about this scheme.*

*Correction. $IGC has raised money 3 times in 3 weeks at an average price of $3.31. At least the company is honest about the absurd move The stock should have a skull and crossbones at Fidelity. Just praying for more borrow to open up. Target price - $6 fast.*

(Compl. ¶¶ 170–71.) Under Rules 9(b) and 12(b)(6), these statements cannot support fraud claims because the SEC does not allege how they are false. (*See SEC v. Francisco*, 262 F. Supp. 3d 985, 989 (C.D. Cal. 2017) ("[T]he plaintiff must set forth the 'who, what, when, where, and how' of the alleged fraud.").)

Nor can these tweets support a fraud claim because they contain no recommendations and make no representations about Mr. Left's future trading strategy. To allege Mr. Left's opinion on the stock's value was false, the SEC "must allege both that 'the speaker did not hold the belief []he professed' and that the belief is objectively untrue." (*Dearborn*, 856 F.3d at 616 (quoting *Omnicare*, 575 U.S. at 1327).) The allegation that Mr. Left asked Portfolio Manager One if they should "*cover half*" when the stock was trading at $12 does not plausibly demonstrate that Mr. Left published an opinion not honestly held. (Compl. ¶ 172.) The historic price data establishes Mr. Left's target price opinion proved true. IGC stock traded at $6.26 on October 4, 2018. (RJN, Ex. I: IGC Historic Stock Prices.)

### F.    The Remaining Alleged Misrepresentations

The SEC attaches an Appendix to the Complaint adding 13 additional securities to its fraud theory: PLTR, NVAX, INO, LK, FB, TWTR, VEEV, NVDA, TSLA, PTE, ABBV, SNAP, and BABA. The Appendix fails to state a claim under either Rules 12(b)(6) or 9(b) because it does not "give fair notice" nor "plausibly suggest an entitlement to relief, such that it is not unfair to require [Mr. Left] to be subjected to the expense of discovery and continued litigation." (*Starr v. Baca*, 652

21

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

F.3d 1202, 1216 (9th Cir. 2011).) Every security listed in the Appendix quotes a published opinion, but there are no allegations explaining why the quoted statements are false. Each row in the Appendix contains a catch-all allegation that the fraud includes "other statements concerning Defendants' positions and recommendation [about the security]." (Compl. at 47–58.) None of the statements in the Appendix make recommendations, only statements of opinion. There is simply insufficient explanation of what is allegedly false or misleading about the statements in the Appendix and why. These securities in the Appendix all fail to state a claim, fail to satisfy Rule 9(b)'s requirement for pleading fraud with particularity, and contravene L.R. 11-7. (*See Francisco*, 262 F. Supp. 3d at 989.)

## II.  The First Amendment Bars The SEC's Fraud Theory

Because the SEC fails to allege a disclosure duty, its theory of fraud—that Mr. Left failed to disclose his private trading strategy when publishing truthful information about companies—violates the "First Amendment principle that freedom of speech prohibits the government from telling people what they must say." (*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321, 2327 (2013) (internal quotation marks and citations omitted).) Compelled speech is subject to strict scrutiny. (*See, e.g.*, *Riley v. Nat'l Fed'n of the Blind of No. Carolina, Inc.*, 487 U.S. 781, 798 (1988); *Frudden v. Pilling*, 742 F.3d 1199, 1207 (9th Cir. 2014).) Unless a government speech mandate regulates advertising or point-of-sale disclosures, "the 'general rule' is 'that the speaker has the right to tailor the speech' and that this First Amendment right 'applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid.'" (*Nat'l Ass'n of Manufacturers v. SEC*, 800 F.3d 518, 523 (D.C. Cir. 2015) (citation omitted).) This rule applies equally to business entities like Citron Capital. (*Id.*)

The SEC's theory of fraud violates Mr. Left's First Amendment rights by seeking to compel him to disclose his personal trading strategy for securities when

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

1   he publishes opinions about them. Speech containing opinions about the value of

2   securities does not fall within the arenas of advertising or point-of-sale disclosures,

3   and strict scrutiny therefore applies to any government-requested sanction for this

4   alleged misconduct. Without laws compelling activist publishers to disclose their

5   personal trading strategies, the First Amendment requires dismissal to protect both

6   Mr. Left and his readership from the chilling effect this enforcement action will

7   have on the flow of truthful information to the markets.

8   **III.    The SEC's Rulemaking By Enforcement Violates Due Process**

9   The SEC's theory of liability violates Mr. Left's due process right to prior

10  notice of the scope and meaning of the laws he is alleged to have violated.

11  Application of the law in a novel way violates the Due Process Clause "if it is so

12  vague and standardless that it leaves the public uncertain as to what conduct it

13  prohibits." (*City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (quoting *Giaccio v.*

14  *Pennsylvania*, 382 U.S. 399, 402–03 (1966)).) The Due Process Clause proscribes

15  enforcing a law or regulation that fails to give *fair notice* or *fair warning* of the

16  prohibited conduct. (*Gen. Elec. Co. v. U.S. E.P.A.*, 53 F.3d 1324, 1328 (D.C. Cir.

17  1995).) "In the absence of notice—for example, where the regulation is not

18  sufficiently clear to warn a party about what is expected of it—an agency may not

19  deprive a party of property by imposing civil or criminal liability." (*Id*. at 1329; *see*

20  *Gates & Fox Co. v. Occ. Safety & Health Rev. Comm'n*, 790 F.2d 154, 156 (D.C.

21  Cir. 1986) ("[T]he due process clause prevents [] deference from validating the

22  application of a regulation that fails to give fair warning of the conduct it prohibits

23  or requires.").)

24  When an agency's actions do not comport with due process, federal courts

25  have repeatedly served as a check on agency power. In *Gen. Elec.*, a regulated

26  entity argued an agency failed to provide fair notice of its interpretation of a

27  regulation when it "'use[d] a citation [or other punishment] as the initial means for

28  announcing a particular interpretation'—or for making its interpretation clear." (53

23

F.3d at 1328 (alterations in original) (citations omitted).) The D.C. Circuit Court vacated the finding of liability because the agency's "interpretation [wa]s so far from a reasonable person's understanding of the regulations that they could not have fairly informed [the regulated entity] of the agency's perspective." (*Id.* at 1330.) Likewise, in *Phelps Dodge Corp. v. Fed. Mine Safety & Health Rev. Comm'n*, a regulated entity appealed a civil penalty imposed by an agency because it "incorrectly applied" the regulation upon which the penalty was based by applying it in a manner inconsistent with the regulation's "basic purpose, fairly read[.]" (681 F.2d 1189, 1192 (9th Cir. 1982).) Acknowledging that "the application of a regulation in a particular situation may be challenged on the ground that it does not give fair warning that the allegedly violative conduct was prohibited[,]" the Ninth Circuit vacated the penalty because "[t]he regulation inadequately expresse[d] an intention to reach the activities to which [the agency] applied it." (*Id.* at 1192–93.) In doing so, the court held that "[i]f a violation of a regulation subjects private parties to criminal or civil sanctions, a regulation cannot be construed to mean what an agency intended but did not adequately express." (*Id.* at 1193 (quoting *Diamond Roofing Co. v. Occ. Safety & Health Rev. Comm'n*, 528 F.2d 645, 649 (5th Cir. 1976)).) The check federal courts provide on overreach by agencies has become only more important in light of the Supreme Court's recent rulings in *SEC v. Jarkesy* (144 S. Ct. 2117 (2024)), and *Loper Bright Enterps. v. Raimondo* (144 S. Ct. 2244 (2024)).

This is the SEC's first-ever enforcement action alleging fraud based on a publisher's failure to disclose personal trading strategy when publishing truthful information about companies. This novel theory is defective for the reasons above, but also violates due process because there is no statute, regulation, or judicial precedent requiring a publisher of truthful information to disclose their personal trading strategy. The few academics that have explored the viability of the SEC's theory in this case petitioned the SEC in February 2020 "to engage in affirmative

24

rulemaking" to "impose[] a duty to update promptly a voluntary short position disclosure which no longer reflects current holdings or trading intention" because "it is unresolved whether short sellers are subject to a duty under federal securities law to update a position disclosure which has been voluntarily initiated by the short seller but no longer reflects current holdings or trading intention." (RJN, Ex. J: John C. Coffee, Jr. *et al.*, *Petition for Rulemaking on Short and Distort*, No. 4-758 at 4 (Feb. 12, 2020) ("[W]e are unaware of any scalping cases which have been brought by the Commission against short sellers to date.")). But this petition never resulted in the SEC promulgating such a rule. Instead, in October 2023, the SEC promulgated a rule requiring institutional investors to file monthly disclosure statements for short sales of a certain magnitude, but those regulations do not apply to Mr. Left. (*See* 17 C.F.R. §§ 240.13f-2, 249.332.) The SEC cannot now engage in rulemaking through an enforcement action without violating due process. "It is one thing to expect regulated parties to conform their conduct to an agency's interpretations once the agency announces them; it is quite another to require regulated parties to divine the agency's interpretations in advance or else be held liable when the agency announces its interpretations for the first time in an enforcement proceeding and demands deference." (*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158–59 (2012).)

## CONCLUSION

The Complaint fails to state a claim because it neither alleges a cognizable theory of fraud nor alleges sufficient facts to support the theory alleged. Mr. Left respectfully requests that the Court grant this Motion and dismiss the Complaint with prejudice.

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

*MEMORANDUM OF POINTS & AUTHORITIES*

Dated: October 4, 2024

Respectfully submitted,

SPERTUS, LANDES & JOSEPHS, LLP

By: _____

James W. Spertus
Lindsey Hay
Mario Hoang Nguyen

*Attorneys for Defendants Andrew Left and Citron Capital, LLC*

Spertus, Landes & Josephs, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone (310) 826-4700; Facsimile (310) 826-4711

26