STEPHEN T. KAM (Cal. Bar No. 327576)
Email: kams@sec.gov
SARAH S. NILSON (Cal. Bar No. 254574)
Email: nilsons@sec.gov
WENDY E. PEARSON (Cal. Bar No. 211099)
Email: pearsonw@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Katharine Zoladz, Regional Director
Brent Wilner, Associate Regional Director
Douglas M. Miller, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Western Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW LEFT, AND CITRON CAPITAL, LLC,<br><br>Defendants. | Case No. 2:24-cv-06311-SPG(JCx)<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: November 20, 2024<br>Time: 1:30 p.m.<br>Ctrm: 5C<br>Judge: Hon. Sherilyn P. Garnett |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   THE COMPLAINT'S ALLEGATIONS..............................................2

III.  LEGAL STANDARD .........................................................................5

IV.   ARGUMENT......................................................................................5

    A.    The Complaint Pleads Fraud With Particularity As Required by Fed. R. Civ. P. 9(b)..........................................................................6

        1.    Fed. R. Civ. P. 9(b) ...............................................................6

        2.    The Complaint Exceeds This Standard....................................7

    B.    Defendants' Motion Relies on Extrinsic Exhibits and Unsubstantiated Factual Statements That May Not Be Considered ..............................8

    C.    The Complaint Adequately Pleads Scheme Liability under Claims I and II..........................................................................................9

        1.    Scheme Liability Is Construed Broadly....................................9

        2.    The Complaint Has Adequately Pled that Defendants Committed Deceptive Acts in Furtherance of Their Scheme..10

    D.    The Complaint Adequately Pleads False Statements Liability Under Claims III and IV...................................................................12

        1.    The SEC Alleges that Defendants Made Misleading Half-Truths About Their Trading..............................................12

        2.    Defendants' Statements on Price Targets Are Actionable, Even If They Are Opinions .................................................14

        3.    Defendants' Challenges to the SEC's Remaining Factual Allegations Are Misguided .................................................17

            a.    Defendants Misread the Complaint ...............................17

            b.    Defendants Offer Alternative Interpretations and Request that the Court Draw Inferences in Their Favor18

    E.    The Complaint Adequately Pleads Materiality ...................................19

    F.    The Complaint Adequately Alleges Defendants' Scienter ...............22

        1.    The Complaint Generally Alleges—As Permitted by Rule 9(b)—Defendants' Required Mental State ...............................22

        2.    The Complaint Also Alleges Facts Supporting a Compelling

Inference of Defendants' Required Mental State ....................22

G.    Defendants' Extraterritoriality and Constitutional Arguments Fail...23

1.    The Complaint Sufficiently Alleges Significant Steps and Substantial Effects Within the U.S. ...........................................23

2.    Defendants' First Amendment and Due Process Arguments Miss the Mark .............................................................................24

V.    DISMISSAL WITH PREJUDICE IS INAPPROPRIATE...........................25

VI.    CONCLUSION..............................................................................................25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Anschutz Corp. v. Merrill Lynch & Co. Inc.*
   785 F. Supp. 2d 799 (N.D. Cal. 2011) ...............................................................10

*Apollo Grp. Inc.*
   774 F.3d 598 (9th Cir. 2014) ...............................................................17

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)...............................................................5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*
   493 F.3d 87 (2d Cir. 2007) ...............................................................10

*Baron v. HyreCar, Inc.*
   No. 2:21-cv-06918-FWS-JC, 2022 WL 17413562
   (C.D. Cal. Dec. 5, 2022) ...............................................................16

*Basic Inc. v. Levinson*
   485 U.S. 224 (1988)...............................................................20

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)...............................................................5

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*
   856 F.3d 605 (9th Cir. 2017) ...............................................................14

*Cooper v. Pickett*
   137 F.3d 616 (9th Cir. 1997) ...............................................................6

*Dorfman v. Nutramax Lab'ys, Inc.*
   No. 13CV0873 WQH RBB, 2013 WL 5353043
   (S.D. Cal. Sept. 23, 2013)...............................................................9

*Dreamstone Entm't v. Maysalward Inc.*
   No. 2:14-cv-02063-CAS (SSx), 2014 WL 4181026
   (C.D. Cal. June 11, 2014) ...............................................................7

*Fecht v. Price Co.*
   70 F.3d 1078 (9th Cir. 1995) ...............................................................7, 20

*Gorman v. Wolpoff & Abramson, LLP*
   No. C 04-04507 JW, 2005 WL 8159399
   (N.D. Cal. Jan. 26, 2005)...............................................................5

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*
   538 U.S. 600 (2003)...............................................................24

*In re Am. Apparel, Inc. S'holder Litig.*
   No. CV 10-06352 MMM JCGX, 2013 WL 174119
   (C.D. Cal. Jan. 16, 2013)...............................................................19

*In re Apple Comput. Sec. Litig.*
   886 F. 2d 1109 (9th Cir. 1989)...............................................................20

*In re Atossa Genetics Inc Sec. Litig.*
  868 F.3d 784 (9th Cir. 2017) ..........................................................................16

*In re Galena Biopharma, Inc. Sec. Litig.*
  117 F. Supp. 3d 1145 (D. Or. 2015) .............................................................10

*In re GlenFed, Inc. Sec. Litig.*
  42 F.3d 1541 (9th Cir. 1994) ........................................................................22

*In re Stac Elecs. Sec. Litig.*
  89 F.3d 1399 (9th Cir. 1996) ...........................................................................6

*Jackson v. Fischer*
  No. C 11-2753 PJH, 2015 WL 1143582
  (N.D. Cal. Mar. 13, 2015) .............................................................................19

*Jerman v. Carlisle*
  559 U.S. 573 (2010) .......................................................................................25

*Johnson v. Riverside Healthcare Sys., LP*
  534 F.3d 1116 (9th Cir. 2008) .........................................................................5

*Lorenzo v. SEC*
  587 U.S. 71 (2019) ...........................................................................................9

*Macquarie Infrastructure Corp. v. Moab Partners*
  601 U.S. 257 (2024) ...........................................................................12, 14, 24

*MCG Cap. Corp*
  392 F. 3d 650 (4th Cir. 2004) ........................................................................21

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*
  575 U.S. 175 (2015) .......................................................................................14

*Owens v. Kaiser Found. Health Plan, Inc.*
  244 F.3d 708 (9th Cir. 2001) .........................................................................25

*Pino v. Cardone Cap., LLC*
  No. 21-55564, 2023 WL 2158802
  (9th Cir. Feb. 22, 2023) .............................................................................5, 19

*Rhoades v. Powell*
  644 F. Supp. 645 (E.D. Cal. 1986) ..................................................................7

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*
  119 F. Supp. 3d 1213 (C.D. Cal. 2015) .........................................................10

*SEC v. Abellan*
  674 F. Supp. 2d 1213 (W.D. Was. 2009) ................................................11, 22

*SEC v. Beck*
  No. 2:22-CV-00812-FWS-JC, 2024 WL 1626280
  (C.D. Cal. Mar. 26, 2024) ..................................................................11, 20, 25

*SEC v. Cap. Gains Rsch. Bureau, Inc.*
  375 U.S. 180 (1963) .......................................................................................23

*SEC v. City of Victorville*
    2013 WL 12133651 (C.D. Cal. Nov. 14, 2013) ................................................20

*SEC v. Corp. Rels. Grp., Inc.*
    No. 6:99CV1222ORL28KRS, 2003 WL 25570113
    (M.D. Fla. Mar. 28, 2003) ................................................20, 21

*SEC v. Fassari*
    No. 21-CV-00403, 2021 WL 2290576
    (C.D. Cal. May 5, 2021) ................................................14, 16, 20

*SEC v. Francisco*
    262 F. Supp. 3d 985 (C.D. Cal. 2017) ................................................8

*SEC v. Gallagher*
    2023 WL 6276688 (S.D.N.Y. Sept. 26, 2023) ................................................11, 13, 21

*SEC v. Gemstar-TV Guide Int'l, Inc.*
    401 F.3d 1031 (9th Cir. 2005) ................................................25

*SEC v. Huttoe*
    1998 WL 34078092 (D.D.C. Sept. 14, 1998) ................................................20, 22

*SEC v. Leslie*
    No. C 07-3444, 2008 WL 3876169
    (N.D. Cal. Aug. 19, 2008) ................................................22

*SEC v. Lidingo Holdings, LLC*
    No. C17-1600 RSM, 2018 WL 2183999
    (W.D. Wash. May 11, 2018) ................................................11

*SEC v. Phan*
    500 F.3d 895 (9th Cir. 2007) ................................................22

*SEC v. Pirate Inv. LLC*
    580 F.3d 233 (4th Cir. 2009) ................................................24

*SEC v. Scoville*
    913 F.3d 1204 (10th Cir. 2019) ................................................23

*SEC v. Sripetch*
    20-Civ-01864, 2020 WL 6396927
    (S.D. Cal. Nov. 2, 2020) ................................................21

*SEC v. Thompson*
    238 F. Supp. 3d 575 (S.D.N.Y. 2017) ................................................15

*SEC v. U.S. Env't, Inc.*
    82 F. Supp. 2d 237 (S.D.N.Y. 2000) ................................................10

*SEC v. Zouvas*
    No. 3:16-cv-0998-CAB, 2016 WL 6834028
    (S.D. Cal. Nov. 21, 2016) ................................................7

*SEC. v. Davenport*
    No. 8:21-CV-01427-JLS-JDE, 2022 WL 3575413

(C.D. Cal. July 13, 2022) ................................................................................. 19

*SEC. v. Strebinger*
    114 F. Supp. 3d 1321 (N.D. Ga. 2015) ........................................................ 11

*U.S. ex rel. Swoben v. United HealthCare Ins. Co.*
    848 F.3d 1161 (9th Cir. 2016) ....................................................................... 6

*U.S. ex. rel Grubbs v. Kanneganti*
    565 F.3d 180 (5th Cir. 2009) ......................................................................... 7

*U.S. v. Bilzerian*
    926 F.2d 1285 (2d Cir. 1991) ...................................................................... 21

*U.S. v. Chang*
    No. 18-CR-00681 (NGG), 2024 WL 2817494
    (E.D.N.Y. May 31, 2024) ............................................................................ 14

*Universal Health Servs., Inc. v. U.S.*
    579 U.S. 176 (2016) ............................................................................ 12, 13

*Williams v. Gerber Prods. Co.*
    552 F.3d 934 (9th Cir. 2008) ......................................................................... 9

*Zweig v. Hearst Corp.*
    594 F.2d 1261 (9th Cir. 1979) ................................................................ 11, 12

**Securities Act of 1933**

Section 17(a)
    [15 U.S.C. § 77q(a)] .................................................................................. 24

Section 17(a)(2)
    [15 U.S.C. § 77q(a)(2)] ....................................................... 1, 12, 13, 17, 22

Section 17(a)(3)
    [15 U.S.C. § 77q(a)(3)] ..................................................................... 1, 9, 22

Section 20(a)
    [15 U.S.C. § 77t(a)] ...................................................................................... 1

Section 17(a)(1)
    [15 U.S.C. § 77q(a)(1)] ..................................................................... 1, 9, 22

**Securities Exchange Act of 1934**

Section 10(b)
    [15 U.S.C. § 78j(b)] ........................................................... 1, 9, 14, 22, 24

Section 27(b)
    [15 U.S.C. § 78aa(b)] ................................................................................. 24

**Federal Regulations**

Rule 10b-5
    [17 C.F.R. § 240.10b-5] ............................................. 1, 9, 10, 12, 13, 14, 17

**<u>Federal Rules of Civil Procedure</u>**

Fed. R. Civ. P. 12(b)(6) .................................................................5

Fed. R. Civ. P. 8 ........................................................................25

Fed. R. Civ. P. 9 ........................................................................25

Fed. R. Civ. P. 9(b) .........................................................6, 7, 8, 10, 22

I.    **INTRODUCTION**

On July 26, 2024, the Securities and Exchange Commission ("SEC") filed its Complaint (Dkt. No. 1, "Compl.") against Defendants Andrew Left ("Left") and Citron Capital, LLC ("Citron Capital").  The SEC's Complaint alleges that, from March 2018 to December 2020 (the "Relevant Period"), Defendants engaged in a fraudulent scheme using Citron Research, Left's online platform, to recommend that his readers buy or sell specific securities at certain target prices without disclosing that he actually intended to quickly trade in the opposite direction of his recommendations at prices far out of line from his recommendations.  It identifies the 26 specific Citron Research tweets and reports and the 23 stock tickers at issue ("Citron Research Publications") and explains how Defendants used these publications as catalysts in the market to generate over $20 million in profits.  The Complaint also alleges that Defendants made five separate sets of false and misleading statements to the market and details the content of each of those false and misleading statements.

The factual allegations support each of the claims in the Complaint: (1) Defendants engaged in a fraudulent scheme to manipulate the market in violation of Section 10(b) and Rules 10b-5(a) and (c) of the Exchange Act of 1934 ("Exchange Act") and Sections 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act") (Claims I and II), (2) Defendants made materially false and misleading statements in violation of Section 10(b) and Rule 10b-5(b) of the Exchange Act and Section 17(a)(2) of the Securities Act (Claims III and IV), and (3) Left acted as a control person of Citron Capital pursuant to Section 20(a) of the Exchange Act (Claim V).

On October 4, 2024, Defendants filed the instant motion to dismiss (Dkt. No. 19-1, the "Mot."), which seeks dismissal of Claims III and IV of the SEC's Complaint.[1]  The Motion distorts or ignores large portions of the Complaint, and

---

[1] Defendants' Motion focuses exclusively on challenging the false and misleading statements alleged in the Complaint, which are not required to be pled for scheme liability (Claims I and II).  *See infra* p. 11.  Defendants also concede that the SEC has

incorrectly describes the law. Defendants' rhetoric notwithstanding, this is a simple fraud case. The SEC alleges Defendants profited handsomely to the tune of $20 million by taking a series of steps to mislead and deceive the market. The SEC seeks to enforce the law by requiring them to disgorge their ill-gotten gains, imposing on them a monetary penalty, and enjoining them from further fraudulent activity. This Court should deny Defendants' Motion to Dismiss in its entirety.

## II.    THE COMPLAINT'S ALLEGATIONS

During the Relevant Period, the Complaint alleges that Defendants used their online platform Citron Research to engage in a scheme to publish 26 reports or tweets containing trading recommendations concerning 23 target companies, leading their readers to believe that they had long or short positions in the target companies' stock, and encouraging their readers to take similar positions. Compl. ¶¶ 5-6. To increase his readership and establish credibility, Left falsely told the public that Citron Research was an independent research firm that had never been compensated by a third party to publish reports or tweets, concealing that he had received over $1 million from a hedge fund by funneling the money he received through a third-party intermediary using fabricated invoices. *Id.* ¶¶ 39-42, 174-77. To enhance his image, Left touted Citron Capital as a successful hedge fund with numerous investors, despite Citron Capital having no outside investors and merely serving as a vehicle to trade Left's own money. *Id.* ¶¶ 31-35. In 21 of the Citron Research Publications, Defendants also included target prices, leading their readers to believe that these were the prices at which they expected the stock to trade, when really Defendants included these target prices to create the impression that the stock would drastically move in the direction of their recommendation and to attract media attention that would

---

sufficiently alleged control person liability pursuant under Claim V. *See* Mot. at 1 n.1. However, to the extent the Court construes Defendants' Motion as also seeking to dismiss Claims I and II of the Complaint, the SEC addresses those arguments herein.

amplify their recommendation. *Id.* ¶¶ 51-56, 87, 199-207. In fact, Defendants traded far out of line with the price targets and arbitrarily assigned the target prices in the hours before publication, with Left himself acknowledging privately that he was simply trying to "juice" the stock. *Id.* ¶¶ 203-04. Left also created anonymous websites and posted negative information about target companies to create the appearance that others in the market agreed with his recommendations. *Id.* ¶ 167.

Defendants used the Citron Research Publications as catalysts to manipulate the stock price of these target companies so that they could take advantage of the change in prices to personally enrich themselves. *Id.* ¶¶ 61-62. Internally, Left bragged that he could "kill" a stock with a Citron Research tweet, advising a colleague that "creating a catalyst [was] the best way to make money," and instructing him to "STOP GAMBLING, run a fund . . . ONLY PLAY CATALYST." *Id.* ¶¶ 49, 62-63.

Despite leading their readers to believe that they had a short or long position in a target company and that they expected the company's stock to trade at a particular target price, they actually intended to reverse their position in the target stock almost immediately after publishing and at a price far different than they had conveyed to the market. *Id.* ¶ 64. In other words, they told their readers to buy so that they could profitably sell and told their readers to sell so that they could profitably buy (also referred to herein as "contra-recommendation trading"). *Id.* ¶¶ 76-82, 197. At times, Defendants also entered limit orders to exit their positions at prices far out of line with the published target price in advance of the report or tweet even being released. *Id.* ¶¶ 81, 127, 156. Through these actions, Defendants engaged in a fraudulent scheme reaping $20 million in illicit trading profits (*Id.* ¶ 88), made misleading half-truths to readers by representing that they were trading in one direction when in fact they intended to trade in a different direction (*Id.* ¶¶ 194-98), and made false and misleading statements in connection with the target prices they published (*Id.* ¶¶ 199-207).

In addition, Defendants made three additional sets of false and misleading

statements. *Id.* ¶¶ 184-93.  <u>First</u>, Left misrepresented in Citron Research Publications that he had not traded in the stock of a certain target company when in fact he had traded in that particular stock. *Id.* ¶ 184.  He also falsely told readers that he would not sell his positions in a certain security until it reached $65 but in fact began selling at $27. *Id.* ¶ 185.  <u>Second</u>, Left told the media on one occasion that he was "extremely short" a stock, and on another occasion that he had "shorted some today" in connection with another stock, even though he had already exited the majority of these positions. *Id.* ¶¶ 113-14, 187.  Similarly, he represented in media interviews that he planned to keep shorting a particular stock until it went to zero, when in fact he exited his position at a much higher price. *Id.* ¶¶ 187-89.  <u>Third</u>, Left falsely told his readers that he had never received compensation from any third party in connection with the Citron Research Publications, when in truth he had received millions of dollars from hedge funds. *Id.* ¶¶ 147-82, 191.

The Complaint then identifies the 26 instances in which Defendants engaged in the deceptive acts and made the false and misleading statements in connection with the Citron Research Publications (*Id.* ¶¶ 5, 86-87, 191, 195), and attaches an 11-page chart setting forth for each instance (i) the fraudulent publication at issue, (ii) the date of the publication, (iii) the ticker for the security at issue, (iv) whether Defendants' recommendation was long (positive) or short (negative), (v) the false and misleading statements, and (vi) the price at which they exited their stock position. *Id.* App. A.

Finally, the Complaint provides additional detail for 10 of the 26 instances— Invitae Corporation ("NVTA"), Roku Inc. ("ROKU"), Cronos Group ("CRON"), Beyond Meat Inc. ("BYND"), XL Fleet Corp. ("XL"), American Airlines Group Inc. ("AAL"), Vuzix Corporation ("VUZI"), General Electric ("GE"), Namaste Technologies ("Namaste"), and India Globalization Capital Inc. ("IGC")—walking through exactly how Left used Citron Research publications to execute his scheme, identifying the false and misleading statements in the publications, and providing evidence of scienter. *Id.* ¶¶ 89-182.

## III.  LEGAL STANDARD

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

In deciding Defendants' Motion, the Court must review all facts alleged in the Complaint, as well as all reasonable inferences from those facts, in the light most favorable to the SEC.  *See Pino v. Cardone Cap., LLC*, No. 21-55564, 2023 WL 2158802, at *2 (9th Cir. Feb. 22, 2023).  This is because a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, not the merits of the suit.  *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008).  For all these reasons, courts have described the test that a complaint must meet to survive a motion to dismiss as exceedingly low.  *Gorman v. Wolpoff & Abramson, LLP,* No. C 04-04507 JW, 2005 WL 8159399, at *1 (N.D. Cal. Jan. 26, 2005) (citation omitted).

## IV.  ARGUMENT

Defendants' Motion appears to make eight main arguments. [2]  First, the SEC's 58-page Complaint did not sufficiently plead Defendants' fraud as required by Rule 9(b). Second, the Court should admit into the record a voluminous amount of extrinsic materials that courts have uniformly held should not be considered at this juncture. Third, the Complaint does not properly allege "scalping."  Fourth, the alleged misstatements regarding the target prices were non-actionable opinions.  Fifth, Defendants attempt to factually disprove a subset of the false statements and request that

---

[2] Defendants' Motion conflates numerous legal concepts and misconstrues the elements that the SEC is required to plead for each claim.  The SEC has done its best to disentangle Defendants' arguments and present them within the correct framework of the securities laws.

5

the Court draw certain inferences in their favor.  Sixth, the alleged false and misleading statements were not material to investors.  Seventh, the SEC did not sufficiently allege that Defendants acted with scienter.  Finally, Defendants assert certain extraterritoriality and constitutional arguments.  The SEC addresses each of these arguments in turn and explains why they should be rejected.

## A.    The Complaint Pleads Fraud With Particularity As Required by Fed. R. Civ. P. 9(b)

Defendants acknowledge that the SEC's "Complaint spans 58 pages and contains over 17,100 words" and includes a "list of additional representations in the Appendix attached to the Complaint."  Dkt. No. 16.  Yet they still contend that these exhaustive and detailed allegations "fail to satisfy Rule 9(b)'s pleading fraud with particularity" without identifying exactly how the SEC has failed.  Mot. at 22. Defendants cite no authority in which a complaint with the degree of specificity here has been dismissed on Rule 9(b) grounds.  In short, Defendants demand a level of precision that was never anticipated by the Federal Rules of Civil Procedure.

### 1.    Fed. R. Civ. P. 9(b)

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  The purpose of Rule 9(b) is to give defendants adequate notice to allow them to defend against charges.  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

The Ninth Circuit recognizes that Rule 9(b) "does not require absolute particularity or a recital of the evidence."  *U.S. ex rel. Swoben v. United HealthCare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).  For example, the complaint need not allege "a precise time frame," "describe in detail a single specific transaction," or identify the "precise method" used to carry out the fraud."  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997); *SEC v. Zouvas*, No. 3:16-cv-0998-CAB, 2016 WL

1  6834028, *4 (S.D. Cal. Nov. 21, 2016) ("Despite these heightened pleading
2  standards, the SEC is not required to plead detailed evidence concerning each and
3  every fraudulent act alleged.") (internal quotations omitted).  Instead, "[i]n a
4  securities fraud action, a pleading is sufficient under Rule 9(b) if it identifies the
5  circumstances of the alleged fraud so that the defendant can prepare an adequate
6  answer." *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995) (citation omitted).[3]

7        Although "some cases hold that a plaintiff must identify the 'who, what, when,
8  where and how' of the alleged fraud, these cases do not articulate a rigid checklist."
9  *Dreamstone Entm't v. Maysalward Inc.*, No. 2:14-cv-02063-CAS (SSx), 2014 WL
10 4181026, at *3 (C.D. Cal. June 11, 2014) (citing *U.S. ex. rel Grubbs v. Kanneganti*,
11 565 F.3d 180, 190 (5th Cir. 2009) ("[T]he time, place, contents and identity standard
12 is not a straightjacket for Rule 9(b).")).  Less specificity is required when, as in the
13 instant case, the alleged fraud occurred over an extended period of time and involved
14 numerous overt acts.  *See Rhoades v. Powell,* 644 F. Supp. 645, 666 (E.D. Cal. 1986)
15 ("To require plaintiffs to allege each misrepresentation over a two-year period would
16 require defendants to plead evidence and would produce a complaint that is not a
17 short and plain statement of the claim.")

18            **2.    The Complaint Exceeds This Standard**

19       The Complaint meets and exceeds the Rule 9(b) pleading requirements.
20 Across 215 paragraphs containing extensive factual allegations, the SEC provides the
21 contours of the scheme, including the genesis and operation of the "Citron Research"
22 website, Left's efforts to portray himself as a successful hedge fund manager, his
23 creation of anonymous websites to post negative information about target companies
24 to amplify his recommendations, his materially false and misleading statements about
25 his trading positions and intended trading activity, his selective public appearances on
26 televised financial programs, his use of target prices to create media attention and

27
28 _____
[3] Defendants suggest that the SEC is required to plead fraud with particularity for
each alleged act and misstatement. *See* Mot. at 15.  This is not required.

7

amplify price movements, his false statements that he never received any
compensation from hedge funds in connection with Citron Research publications, his
actions in creating sham invoices to conceal the compensation he received from
hedge funds, and the profits Defendants reaped from their illegal activity.

After describing the contours of Defendants' fraudulent scheme, the Complaint
details for all 26 of the Citron Research Publications the content of each alleged false
and misleading statement, the date of the statement, the manner in which it was
broadcast to the market, whether it was a long or short recommendation, the price
target included, the price at which Defendants exited the trade, and the total illicit
sales proceeds Defendants' realized.  The Complaint then walks through 10 specific
examples to provide the context for Defendants' scheme and false statements and to
provide further evidence of Defendants' scienter and deceptive acts.

Defendants cite no authority to support a claim that allegations containing the
level of detail here are not sufficient.  Instead, they cite only one case—*SEC v.
Francisco,* 262 F. Supp. 3d 985 (C.D. Cal. 2017)—wherein the Court found that the
SEC had failed to allege "the nature of the fraud," omitted descriptions of the fraudulent
statements, when the fraud occurred, and through what means.  In sharp contrast to
*Francisco*, the Complaint here precisely sets out the who, what, when, where, and how
of Defendants' fraudulent actions and misstatements.  The Complaint exceeds the
necessary pleading standards and sets out in more than adequate detail exactly what
Defendants have done wrong so that they may prepare a defense.  Accordingly, the
Complaint satisfies Rule 9(b), and Defendants' attempt to dismiss should be denied.

## B.    Defendants' Motion Relies on Extrinsic Exhibits and Unsubstantiated Factual Statements That May Not Be Considered

Since nothing within the four corners of the Complaint warrants dismissal,
Defendants ask the Court to admit into the record almost 200 pages of extrinsic
documents.  The SEC addresses these exhibits and their contents in its separately filed

Opposition to Defendants' Request for Judicial Notice and Cross Motion to Strike.[4]
Dkt. No. 22.  When facts from outside of the Complaint are removed from the
Defendants' Motion, little is left to it.  Indeed, substantial portions of the Motion—in
some cases entire pages—must be set aside.

### C.    The Complaint Adequately Pleads Scheme Liability under Claims I and II

#### 1.    Scheme Liability Is Construed Broadly

Claims I and II of the Complaint charge Defendants with violating Sections
17(a)(1) and (3) of the Securities Act, and Section 10(b) of the Exchange Act and
Rules 10b-5(a) and (c) thereunder.  Section 17(a)(1) prohibits any person, in the offer
or sale of securities, from employing any device, scheme, or artifice to defraud.
Section 17(a)(3) prohibits any person, in the offer or sale of securities, from engaging
in any transaction, practice, or course of business which operates, or would operate,
as a fraud or deceit upon the purchaser.  Rules 10b-5(a) and (c) make it unlawful for
any person, in connection with the purchase or sale of securities, to employ any
device, scheme or artifice to defraud, or engage in any act, practice, or course of
business which operates or would operate as a fraud or deceit upon any person.

Scheme liability under Sections 17(a)(1) and (3) and Rules 10b-5(a) and (c)
"capture a wide range of conduct."  *Lorenzo v. SEC*, 587 U.S. 71, 79 (2019).  Unlike
false statements liability, scheme liability requires allegations of deceptive acts, which
may include false or misleading statements.  *See In re Galena Biopharma, Inc. Sec.*

---

[4] For example, Defendants attempt to convince the Court that the SEC does not
adequately plead omission liability or materiality in light of purported generic
disclaimers.  But, as detailed in the SEC's motion to strike, the language and meaning
of the disclaimers are subject to dispute, the disclaimers are not relevant to the
sufficiency of the allegations in the Complaint, the disclaimers are at most applicable
to two reports, and regardless, a determination of the sufficiency of a disclaimer is not
an issue that is appropriate on a motion to dismiss.  *See Dorfman v. Nutramax Lab'ys,
Inc.*, No. 13CV0873 WQH RBB, 2013 WL 5353043, at *11 (S.D. Cal. Sept. 23,
2013) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008))
("While there are disclaimers and qualifying language, determining whether a
reasonable consumer would be deceived is inappropriate at [the motion to dismiss]
stage of the litigation.")

*Litig.,* 117 F. Supp. 3d 1145, 1192 (D. Or. 2015) ("Scheme liability claims are distinct
from claims under Rule 10b–5(b).  Rule 10b–5(b) claims are based solely on deceptive
statements or omissions, whereas scheme liability claims involve deceptive conduct.")
A complaint sufficiently pleads scheme liability under Rule 9(b) if it alleges "the
nature, purpose, and effect of the fraudulent conduct and the roles of the defendants."
*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 102 (2d Cir. 2007).
Accordingly, the Rule 9(b) pleading standard is "relaxed" for fraudulent or
manipulative scheme claims, such as the ones the SEC alleges in Claims I and II,
because "such claims do not necessarily involve [only] affirmative
misrepresentations."  *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d
1213, 1239 (C.D. Cal. 2015); *see also SEC v. U.S. Env't, Inc.*, 82 F. Supp. 2d 237,
240 (S.D.N.Y. 2000); *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d
799, 811 (N.D. Cal. 2011) (describing pleading burden as "somewhat relaxed").

### 2.    The Complaint Has Adequately Pled that Defendants Committed Deceptive Acts in Furtherance of Their Scheme

To the extent Defendants' Motion challenges Claims I and II, Defendants do
not address the laundry list of deceptive acts that Defendants committed in
furtherance of their scheme, namely that:  Left falsely portrayed himself as managing
a successful hedge fund, falsely presented Citron Research as an independent
research firm, created anonymous websites and posted negative information about
target companies, and took active steps to conceal the financial arrangements he had
with one of the hedge funds by creating sham invoices.  Instead, Defendants only
argue that "there is no precedent for a scalping[5] case absent allegations of the publication
of false information about the issuer of a security."  Mot. at 8.  In other words,

---

[5] Defendants' alleged deceptive actions—taking a position, issuing a recommendation
encouraging readers to buy or sell, and then trading in the opposition direction for a
profit—has been referred to by courts as "scalping" and is also referred to herein as
contra-recommendation trading.

Defendants contend that the SEC must allege that Defendants' publications include false information about the target companies. They are wrong.

The fraud alleged here lies not in making false statements to the market about a subject company's securities, but in Defendants' failure to disclose their trading activity in the securities they were recommending. *See SEC. v. Strebinger*, 114 F. Supp. 3d 1321 (N.D. Ga. 2015) (finding actionable scheme where complaint did not allege that the information published about the target company was false and only failed to disclose the defendants' ownership interests); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1266 (9th Cir. 1979) (finding a "scheme to manipulate the market" where "withheld information did not relate directly to the company's value and expected performance, but it was necessary to avoid misleading [defendant]'s audience on the reliance they could place on the column"). Courts have consistently held that this contra-recommendation trading—recommending that others buy a stock while not disclosing that one is going to sell and vice versa—is what is deceptive in "scalping" cases. *See, e.g., SEC v. Beck*, No. 2:22-CV-00812-FWS-JC, 2024 WL 1626280 (C.D. Cal. Mar. 26, 2024) (holding that defendant engaged in a fraudulent scheme by recommending stocks without disclosing his intent sell); *SEC v. Gallagher*, 2023 WL 6276688, at *12 (S.D.N.Y. Sept. 26, 2023) (denying motion to dismiss and finding that the SEC sufficiently alleged "scalping" where Defendant did not disclose his "then-present intent to sell" stocks that he was recommending); *SEC v. Lidingo Holdings, LLC*, No. C17-1600 RSM, 2018 WL 2183999, at *8 (W.D. Wash. May 11, 2018) (scheme liability where defendant "engaged in scalping activity [by] purchas[ing] issuer stock just prior to publishing an article about the issuer, then sold the stock at a profit soon after his article was published, which was contrary to the advice he gave in his articles advocating for holding for the long-term"); *SEC v. Abellan*, 674 F. Supp. 2d 1213, 1219 (W.D. Was. 2009) ("Scalping, a known practice whereby the owner of shares of a security recommends that security for investment and then immediately sells it at a profit upon

11

the rise in the market price which follows the recommendation, constitutes fraud or deceit for purposes of establishing violation of the Exchange Act.").

The Complaint details Defendants' roles in the scheme, the specific deceptive acts they performed, and how their acts constitute fraud. *See* Compl. ¶¶ 57-85. There is no question that such a scheme—encouraging readers to buy while intending to quickly sell and encouraging readers to sell while intending to quickly buy—violates the antifraud federal securities laws. *See Zweig*, 594 F.2d at 1267-68.

## D.    The Complaint Adequately Pleads False Statements Liability Under Claims III and IV

Claims III and IV allege that Defendants violated Section 17(a)(2) of the Securities Act and Rule 10b-5(b) of the Exchange Act. Section 10b-5(b) prohibits "any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" in connection with the purchase or sale of a security. Section 17(a)(2) prohibits obtaining money or property by virtue of this same conduct in connection with the offer or sale of a security.

### 1.    The SEC Alleges that Defendants Made Misleading Half-Truths About Their Trading

Defendants argue that "[a]n omissions-based fraud theory requires a duty to disclose the allegedly omitted material facts" and that Defendants "owe[d] no disclosure duty to [their] readers." *See* Mot. at 1, 4. Defendants' argument misstates the SEC's allegations and the law.

To plead false statements liability, both false representations and "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations." *Universal Health Servs., Inc. v. U.S.*, 579 U.S. 176, 188 & n.3 (2016); *Macquarie Infrastructure Corp. v. Moab Partners*, 601 U.S. 257, 263 (2024) (Rule 10b-5(b) covers "misleading half-truths" because "[e]ven when there is no existing independent duty to disclose

information, once a [defendant] speaks on an issue or topic, there is a duty to tell the whole truth"). The Complaint does not allege that Defendants simply omitted material information, as their Motion suggests. Rather, the Complaint alleges that Defendants made misleading half-truths by representing that they held short or long positions in certain target companies' securities and recommended that readers trade in the same manner as them, when at the time of making those representations Defendants actually intended to immediately reverse their positions and trade contrary to those recommendations, which rendered their representations misleading. Compl. ¶¶ 194-98. In other words, Defendants stated the truth "only so far as it goes" (*i.e.*, their current short or long positions) while "omitting critical qualifying information" (*i.e.*, that they actually intended to immediately exit their current short or long positions).[6] *See Universal Health Servs.*, 579 U.S. 176 at 188.

Courts have held that such statements are actionable misleading half-truths. *See Gallagher*, 2023 WL 6276688, at *12 (defendant's tweets recommending that investors buy securities were rendered misleading by defendant's failure to disclose then-present intent to sell securities following the tweets because "[o]nce [defendant] chose to publicly recommend the purchase of certain stocks on Twitter rather than remain silent, he assumed a 'duty to tell the whole truth'")[7]; *SEC v. Fassari*, No. 21-

---

[6] For example, in connection with their publication on NVTA, the Complaint alleges that Defendants made a misleading half-truth by representing to Citron Research readers that they intended to "*continue to add to our [long] position at current levels*" without disclosing that they intended to begin selling their shares in NVTA. Compl. at 50. Similarly, in connection with their publication on GE, the Complaint alleges that Defendants made a misleading half-truth by telling the market that "*Citron took the opportunity to buy [GE] stock*" without disclosing that they intended to immediately exit their long position following the publication. *Id.* ¶ 156.

[7] Notably, in denying the defendant's motion to dismiss, the court in *Gallagher* recognized that "scalping" cases involve substantial overlap between scheme liability and false statements liability and found scheme liability to be sufficiently alleged "because it is clear the SEC has alleged statements [about his trading intentions] that are materially misleading by omission." 2023 WL 6276688, at *13. Accordingly, the court found it unnecessary "to parse whether allegations falling within the scope of section 17(a)(2) and rule 10b-5(b) also fall within the scope of the scheme liability subsections." *Id.*

CV-00403, 2021 WL 2290576, at *6 (C.D. Cal. May 5, 2021) ("[I]t was a material misrepresentation for [defendant] to state that he was holding on to his shares when he was actually selling them."); *U.S. v. Chang*, No. 18-CR-00681 (NGG), 2024 WL 2817494, at *11 (E.D.N.Y. May 31, 2024) ("Here, the Government contends that it is not relying 'solely' on omissions to prove the charges, but rather includes the omissions to 'explain why the affirmative representations were false or misleading.' This is precisely what the *Macquarie* Court held as proper for sustaining a claim.").[8]

## 2. Defendants' Statements on Price Targets Are Actionable, Even If They Are Opinions

Defendants argue that they are insulated from liability for the price targets included in some of the Citron Research Publications because they added language such as "we expect" and "we believe" in these publications, and therefore these statements were nothing more than opinions.  Mot. at 11, 13.  Once again, Defendants are wrong.

In *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, the Supreme Court held that a statement of opinion is an actionable misstatement under any one of three circumstances: (1) where the speaker does not honestly hold the stated opinion; (2) where the opinion includes supporting facts that were untrue; or (3) where the opinion omits to state facts necessary to make its statement of opinion not misleading.  575 U.S. 175, 187-93 (2015).  The Ninth Circuit has applied this standard to Section 10(b) and Rule 10b-5 claims.  *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,* 856 F.3d 605, 615-16 (9th Cir. 2017) (finding opinion statements actionable where (1) the speaker did not hold the belief and the belief is objectively untrue; (2) a supporting fact supplied by the speaker is untrue; or (3) the omission of facts makes the statement misleading).

Defendants fail to address any of these prongs in their Motion.  For the reasons below, Defendants' statements regarding target prices are actionable.

---

[8] The only two cases that Defendants cite for support—*Retail Wholesale* and *Omnicare*—are irrelevant as these cases did not allege that Defendants made false and misleading half-truths.

14

First, the Complaint details facts demonstrating that Defendants did not have a reasonable belief that the target prices represented the true value of the securities. For each of the 21 Citron Research Publications which included target prices, the SEC provides the specific target prices that Defendants published to the market and compares those target prices to the average prices at which Defendants actually bought or sold the security, which were consistently out of line with those target prices.  Compl. at 47-58.  Then, the Complaint walks through five specific examples where Defendants bought or sold at prices at least 50% higher or lower than the target price they published.  *Id.* ¶ 202.  Drawing all reasonable inferences in the SEC's favor, as the Court must in the context of this motion, these facts easily support a finding that Defendants did not have a reasonable basis for the target prices they published.  *See SEC v. Thompson*, 238 F. Supp. 3d 575, 600 (S.D.N.Y. 2017) (defendants trading around the time of glowing stock prediction "suggests they did not reasonably believe that the securities independently had the touted value").

The SEC alleges additional facts which further demonstrate that Defendants did not actually believe the valuations that they published.  The SEC provides specific examples of Left privately telling his colleagues his hope of pushing the NVTA stock price to $30, selecting $100 as the target price, before ultimately selling at approximately $27 to $28 per share.  *Id.* ¶ 202.  The SEC also includes allegations of Left privately admitting that he was simply trying to "juice" the stock by including certain target prices.  *Id.* ¶¶ 93, 204.  Finally, the SEC alleges two specific examples where Defendants substantially and arbitrarily revised the target prices in the days immediately leading up to the publication.  *Id.* ¶ 203.

Second, the Complaint adequately alleges that Left included supporting facts that were untrue.  For example, it alleges that Defendants set a $100 price target in a Citron Research Publication on NVTA and included the supporting fact that they would "continue to stay long until the stock hits at least $65," but immediately began

1  selling NVTA stock at approximately $27 to $28 per share.  *Id.* ¶ 205.  The

2  Complaint also alleges other examples of Defendants providing false supporting facts

3  in connection with the Citron Research Publications on CRON, BYND, and Namaste,

4  all of which included target prices.  *Id.* ¶¶ 113, 122, 165.  These allegations squarely

5  satisfy the second prong of *Dearborn*.

6        <u>Third</u>, the Complaint alleges that Defendants omitted certain facts that

7  rendered Defendants' statements about the price targets misleading.  The Ninth

8  Circuit has held that the omitted facts must "conflict with what a reasonable

9  investor would take from the statement itself."  *In re Atossa Genetics Inc Sec.*

10  *Litig.,* 868 F.3d 784, 802 (9th Cir. 2017).  Here, the Complaint alleges that for

11  each of the 21 Citron Research Publications containing a price target, Defendants

12  omitted that they were trading far above (for short reports) or far below (for long

13  reports) the price targets that they disseminated, thereby rendering the price targets

14  they published misleading.  Compl. ¶ 206.  For additional support, the SEC

15  provides the average price at which Defendants bought or sold each of these

16  securities and compares that price to the target price Defendants published.  *Id.* at

17  47-58.  To further illustrate how the price targets were rendered misleading, the

18  Complaint describes Defendants' trading around the Citron Research Publication

19  on XL as an example.  *Id.* ¶ 206.  Finally, the Complaint also alleges how this

20  omitted information conflicted with what a reasonable investor would take from

21  the published target prices.  *See Id.* ¶ 207; *see Fassari*, 2021 WL 2290576, at *6

22  (finding defendants' statements about a company's price targets material); *Baron*

23  *v. HyreCar, Inc.*, No. 2:21-cv-06918-FWS-JC, 2022 WL 17413562, at *11 (C.D.

24  Cal. Dec. 5, 2022) (finding an actionable opinion statement where the company

25  omitted key facts about its performance that "render[ed] the statements misleading

26  to a reasonable reader").

27        Defendants' reliance on *Apollo Grp. Inc.* (Mot. at 11) is misplaced.  That case

28  involved "business puffery," where an education company made subjective, optimistic

16

statements about its past student enrollment trends.  774 F.3d 598, 606 (9th Cir. 2014).

Defendants publishing target prices that they did not believe and that were designed to

simply "juice" the stock price is neither "business puffery" nor optimistic statements

about past trends.  Defendants also argue that the price target opinions could not have

been false, because on occasion the historical stock price data proved the price targets

were "mostly true." (Mot. at 8).  But these arguments are both irrelevant and improper

for the Court to consider in the context of a motion to dismiss.  *See* Dkt. No. 22 at 16-19.

The Court should thus find that the Complaint pleads the allegations regarding the

price targets with the requisite particularity.

### 3. Defendants' Challenges to the SEC's Remaining Factual Allegations Are Misguided

#### a. Defendants Misread the Complaint

Defendants' attacks on the remaining factual allegations in the Complaint are

misguided, as they focus on statements that do not independently form the basis of

Claims III and IV, but simply provide further evidence of Defendants' scienter and

deceptive acts.  For example, contrary to Defendants' assertions, the SEC <u>does not allege</u>

that the following statements were materially false or misleading under Section 17(a)(2)

and Rule 10b-5(b): (1) "*ROKU stock is uninvestable now*" in connection with the Citron

Research Publication on ROKU (*Id.* at 12); (2) CRON stock was "*overhyped*" in

connection with the Citron Research Publication on CRON (*Id.* at 14); (3) "*Left and*

*Citron Capital did not intend to hold the positions beyond that day*" in connection with

AAL (*Id.* at 16); and (4) Left asking Anson "*do we cover half*" in connection with IGC

(*Id.* at 30).  On the other hand, Defendants incorrectly claim that the SEC does not allege

false and misleading statements regarding NVTA, GE, XL, AAL, and IGC, when the

Complaint clearly <u>does allege</u> that Defendants made misleading half-truths in connection

with these publications when they encouraged readers to buy (or sell) despite actually

intending to sell (or buy) and at prices far different than the target prices they published.

Compl. ¶¶ 195-97, 201-02, 206; *see* Sections II.D and II.E.

17

**b.** **Defendants Offer Alternative Interpretations and Request that the Court Draw Inferences in Their Favor**

Defendants also inappropriately offer alternative interpretations of certain facts alleged in the Complaint. For example, Defendants argue that Left did not tell his followers that he had never received compensation for "publishing trading recommendations" and instead meant that he had never received compensation "to publish research." Mot. at 18. This argument fails as the Court cannot draw competing inferences in the context of a motion to dismiss, but even if it could, the inference offered by Defendants is nonsensical. In response to learning that a competing short publisher was "*being paid a percentage of profits from a hedge fund that was trading around his short report*," the SEC alleges that Left told his readers that "*[n]o credible hedge fund or short seller would ever do this*" and that "*compensation tied to the success of a trade would not pass [Citron's] internal compliance.*" Compl. ¶¶ 151-52. Left went on to represent that "*in 18 years of publishing, we have never been compensated by a third party to publish research.*" *Id.* ¶ 152. The only plausible inference the Court can draw from these statements is that Left was representing to the market that he "*had never received compensation from hedge funds in connection with publishing trading recommendations*," as alleged in the Complaint. *Id.* ¶ 147. Defendants' alternative inference also ignores other instances described in the Complaint where Defendants were paid by hedge funds in connection with trading around Citron Research's recommendations. *Id.* ¶¶ 154, 159, 178-82.

Defendants also offer an alternative interpretation to the SEC's allegation that they made a false and misleading statement in connection with the Citron Research Publication on NVTA—where they represented that they "*will continue to stay long until the stock hits at least $65*" but began immediately selling their position at $27—by arguing that their actions were "fraud by hindsight." Mot. at 11. Once again, the inference that Defendants request the Court to draw is improper in the context of a motion to dismiss and does not make sense. This is not fraud by hindsight, which courts

18

1  have defined as an "optimistic prediction[] later proved incorrect." *In re Am. Apparel,*

2  *Inc. S'holder Litig.,* No. CV 10-06352 MMM JCGX, 2013 WL 174119, at *29 (C.D.

3  Cal. Jan. 16, 2013). Instead, the Complaint alleges that Defendants represented that they

4  intended to do one thing and then immediately did something else, and thus the only

5  plausible inference that can be drawn is that Defendants lied to their readers. Compl. ¶¶

6  94-95; *see Jackson v. Fischer*, No. C 11-2753 PJH, 2015 WL 1143582, at *9 (N.D. Cal.

7  Mar. 13, 2015) (no fraud by hindsight where the difference between the stated affairs is

8  "the result of a falsehood").

9      Defendants then ask the Court to adopt more inferences in the light most

10  favorable to them with respect to several additional allegations: (1) "*watching*

11  *$ROKU from the side*" (Mot. at 12-13), (2) "*took a small size position off today but I*

12  *am still extremely short the stock*"[9] (*Id.* at 13), and (3) "*shorted some today*" (*Id.* at

13  14). Once again, these requests must be rejected, as it would require the Court to

14  weigh competing inferences on a motion to dismiss, which the Ninth Circuit has held

15  is improper. *See Pino*, 2023 WL 2158802, at *3.

16  ## E.    The Complaint Adequately Pleads Materiality

17      Defendants argue that the SEC has failed to adequately plead materiality for its

18  false and misleading statement claims (III and IV).[10] Defendants do not challenge the

19  materiality of the Defendants' false statements in connection with Defendants having

20  received compensation from hedge funds or the materiality of Defendants' statements on

21  price targets (Compl. ¶¶ 191-93, 207), which in any event courts have held are material

22

23

24  [9] Defendants erroneously argue that the SEC does not allege that CNBC published Left's statement that he "shorted some today." The Complaint specifically alleges

25  that within an hour of Left telling CNBC about his short position, CNBC published an article notifying the public that Left had taken a short position in BYND. Compl.

26  ¶ 124. Indeed, the CNBC article that Defendants seek to admit specifically states that "*Left . . . confirmed in an email to CNBC that he took a short position in Beyond*

27  *Meat Friday.*" *See* Dkt. No. 19-8.

28  [10]Materiality is not an element for Claims I and II. *See SEC. v. Davenport*, No. 8:21-CV-01427-JLS-JDE, 2022 WL 3575413, at *5 (C.D. Cal. July 13, 2022) ("Materiality is an element only for false statement claims, not for scheme claims.")

as a matter of law.  *See SEC v. Corp. Rels. Grp., Inc.*, No. 6:99CV1222ORL28KRS,
2003 WL 25570113, at *7 (M.D. Fla. Mar. 28, 2003) (finding it material that defendants
were paid in connection with publishing articles recommending the purchase of the
stock); *Fassari*, 2021 WL 2290576, at *6 (finding that defendant's tweets discussing
price targets rose to the level of a material misrepresentation).  Rather, Defendants only
argue that their "trading strategy is immaterial."  Mot. at 7.

    Information is material "if there is a substantial likelihood that a reasonable
investor would consider it important" in making an investment decision.  *Basic Inc. v.
Levinson*, 485 U.S. 224, 231 (1988).  Defendants' argument fails because the
determination of whether a false or misleading statement would be material to a
reasonable investor is not an appropriate issue on a motion to dismiss.  *See SEC v. City
of Victorville*, 2013 WL 12133651, *6 (C.D. Cal. Nov. 14, 2013) (materiality is left to
the trier of fact); *In re Apple Comput. Sec. Litig.*, 886 F. 2d 1109, 1113 (9th Cir. 1989)
(same).  This is because reasonable minds could differ on the question of materiality.
*Fecht*, 70 F.3d at 1081 (9th Cir. 1995) (finding that a complaint may not properly be
dismissed on the ground that the alleged misstatements or omissions are not material
unless they are "so obvious that reasonable minds could not differ").

    But even if the Court did consider materiality at this stage in the litigation,
there is no doubt that Defendants' contra-recommendation trading was material.
Courts have long held that a party's trading position in the stock he is publicly
speaking about is material as a matter of law because it calls into question whether
the recommendation was sincere or motivated by self-interest.  *See SEC v. Huttoe*,
1998 WL 34078092, at *7 (D.D.C. Sept. 14, 1998) (defendant's practice of
recommending stocks to his newsletter subscribers while failing to disclose that he
intended to sell his personal holdings "reflects on the objectiveness of the investment
advice and is therefore material"); *Beck*, 2024 WL 1626280, *7 ("like many other
courts, the court concludes Plaintiff's evidence showing Defendant Beck [promoted]
stocks without disclosing his ownership or intent to sell is sufficient to meet

1  Plaintiff's initial burden as to materiality"); *Gallagher*, 2023 WL 6276688, at *9

2  ("[defendant]'s omission of his then-present intent to sell made his stock

3  recommendations misleading to a reasonable investor, who would not expect

4  [defendant] to sell substantial portions of his shares at the time of, or shortly after, his

5  Alerts"); *Corp. Rels.*, 2003 WL 25570113, at *8 ("the fact that the [defendants] were

6  selling their stock at the same time they were encouraging their readers to buy would

7  clearly be material to reasonable investors"); *SEC v. Sripetch*, 20-Civ-01864, 2020

8  WL 6396927, at *4 (S.D. Cal. Nov. 2, 2020) (same).  Thus, Defendants' challenge at

9  the motion to dismiss stage should be rejected.[11]

10        Defendants' argument that the SEC has not alleged that "Mr. Left's personal

11  trading affected stock prices" misses the point.  Mot. at 8.  Whether a misleading

12  statement moves the stock price is not determinative of materiality.  *See U.S. v.*

13  *Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991) ("[W]hether a public company's stock

14  price moves up or down or stays the same . . . does not establish the materiality of the

15  statements made, though stock movement is a factor the jury may consider relevant.");

16  *Gallagher*, 2023 WL 6276688, at *9 ("[T[he deceit of investors occurs, and is complete,

17  upon the dissemination of the false or misleading touts, without regard to whether those

18  touts later cause a rise in share price or sales volume.")  In any event, the Complaint

19  amply alleges that Defendants' publications were followed by dramatic price moves.

20  Compl. ¶ 86.  And Defendants' argument that investors knew that Defendants realized

21  gains from price changes is unsubstantiated and again misses the point.  Mot. at 6.

22  While a reasonable investor might expect Defendants to sell their shares at some point,

23  one would not expect that while Defendants were urging their followers to buy a target

24  security, they actually planned to imminently sell (and in some cases had already begun

25

26  _____

[11] The lone case that Defendants cite for support, *MCG Cap. Corp.*, is inapposite.  In
27  this case, the court found that no reasonable investor would have considered the sole
fact that the founder of a company had not attended one additional year at a particular
28  university as altering the large amount of publication information appearing in the
company's filings.  392 F.3d 650, 658 (4th Cir. 2004).

selling) substantial portions, and often times all, of their shares.

### F.    The Complaint Adequately Alleges Defendants' Scienter

Violations of Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act/Rule 10b-5 require scienter, while violations of Section 17(a)(2) and (3) of the Securities Act require only a showing of negligence.  *See SEC v. Phan*, 500 F.3d 895, 907-08 (9th Cir. 2007).

#### 1.    The Complaint Generally Alleges—As Permitted by Rule 9(b)—Defendants' Required Mental State

It is well-established that scienter can be alleged generally in a complaint.  The plain text of Rule 9(b) provides that because the heightened pleading requirements of the Private Securities Litigation Reform Act have no application in an SEC enforcement action, the SEC "may aver scienter generally, just as the rule states – that is, simply by saying that scienter existed."  *In re GlenFed*, *Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994).  Said succinctly, "the Ninth Circuit has adopted a rather lenient scienter standard in cases brought by the SEC . . . and to satisfy Fed. R. Civ. P. 9(b), the SEC need only state that scienter existed."  *SEC v. Leslie, No.* C 07-3444, 2008 WL 3876169, at *6 (N.D. Cal. Aug. 19, 2008).  Notwithstanding this lenient standard, the SEC not only alleges that Defendants "acted with scienter" but also summarizes the factual allegations supporting that inference.  Compl. ¶¶ 211-212.

#### 2.    The Complaint Also Alleges Facts Supporting a Compelling Inference of Defendants' Required Mental State

The SEC alleges a multitude of facts demonstrating that Defendants engaged in a long running pattern—23 companies over a two-year period—of contra-recommendation trading.  Compl. ¶ 211.  Courts have held that such conduct, previously referred to as "scalping," "shows repeated, willful activity" supporting an inference of scienter.  *See, e.g., Huttoe*, 1998 WL 34078092, at *7 (reasoning that defendant's two years of active contra-recommendation trading established scienter); *Abellan*, 674 F. Supp. 2d at 1219 (scienter is also evident where persons engage in "scalping" because it

22

1    is "an extreme departure from ordinary care").

2        If that were not enough, the SEC also alleges that Defendants engaged in

3    numerous other acts evidencing their scienter, which Defendants deliberately ignore,

4    including Left portraying himself as a successful hedge fund manager, creating

5    anonymous websites and posting negative information about target companies, making

6    public appearances on televised programs and lying about his trading positions, falsely

7    telling the market that he had never received any compensation from hedge funds, and

8    taking active steps to conceal those financial arrangements by funneling the

9    compensation through a third-party intermediary using sham invoices.  Compl. ¶ 211.

10       Defendants' sole argument in response is that the Complaint should be dismissed

11   because it does not allege that Defendants' publications contained factual inaccuracies

12   about the target companies.  Mot. at 7.  However, as discussed *supra* in Section IV.C.2,

13   this is irrelevant as the Defendants' fraud lies in misleading Citron Research readers

14   about their trading activity.  *See SEC v. Cap. Gains Rsch. Bureau, Inc*., 375 U.S. 180,

15   194-95 (1963) (the defendant's belief that it was imparting sound advice to readers was

16   immaterial where it failed to inform them of material facts about its trading).

17   **G.    Defendants' Extraterritoriality and Constitutional Arguments Fail**

18
19   **1.    The Complaint Sufficiently Alleges Significant Steps and Substantial Effects Within the U.S.**

20       Finally, Defendants erroneously argue that because "Namaste's securities are

21   traded on the Canadian Securities Exchange," principles of extraterritoriality bar the

22   SEC from bringing the claims related to Namaste.  Mot. at 19-20.  Under Section

23   27(b) of the Exchange Act,[12] the SEC can assert claims over (1) conduct within the

24   United States that constitutes significant steps in furtherance of the violation or (2)

25
26   ---
     [12] The 2010 Dodd-Frank Act amended the securities laws to reverse the Supreme
27   Court's *Morrison* decision and restored the "conduct or effects" jurisdictional test.
     *See SEC v. Scoville,* 913 F.3d 1204, 1218 (10th Cir. 2019) ("We conclude that
     Congress has 'affirmatively and unmistakably' indicated that the antifraud provisions
28   of the federal securities acts apply extraterritorially when the statutory conduct-and-
     effects test is met.").

                                          23

conduct occurring outside the U.S. that has a foreseeable substantial effect within the U.S.  15 U.S.C. § 78aa(b).[13]

Here, the Complaint alleges both significant steps and substantial effects within the United States, including (i) the arrangement between Left, a California resident, and Anson; (ii) Anson Funds Management, LP having its principal place of business in Dallas, Texas; (iii) the release of Citron Research publications by Left within the United States to investors; (iv) Namaste being traded as a penny stock in the United States under the symbol "NXTTF;" (v) Left creating an anonymous website that he used to post negative information about Namaste; and (vi) Left entering into an arrangement to be paid through sham invoices while in the U.S.  Compl. ¶¶159-73.

### 2. Defendants' First Amendment and Due Process Arguments Miss the Mark

Defendants make two constitutional arguments, claiming incorrectly that the First Amendment and due process principles require dismissal.  Mot. at 22-23.  Both arguments fail.

First, the SEC does not seek to compel Defendants' speech.  Rather, the SEC alleges that Defendants chose to issue certain publications to their readers, and those publications contained statements that were false or misleading.  *See Macquarie*, 601 U.S. at 257 (finding statements containing misleading half-truths actionable).  The First Amendment has <u>never</u> protected fraud.  *See Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612, (2003) (The "First Amendment does not shield fraud."); *SEC v. Pirate Inv. LLC*, 580 F.3d 233, 255 (4th Cir. 2009) ("Punishing fraud, whether it be common law fraud or securities fraud, simply does not violate the First Amendment.")

---

[13] Neither of the cases relied on by Defendants—*Liu* or *Sumeru*—stand for the proposition that *Morrison*'s reasoning has been applied to Section 17(a).  *See* Mot. at 19, n.3.  To the contrary, the Ninth Circuit in *Sumeru* highlighted the "textual difference" between Sections 10(b) and 17(a) in deeming these extraterritorial requirements satisfied.

24

Second, nothing about this enforcement action is novel, and Defendants cannot credibly argue that they were unaware of the securities laws' longstanding prohibition on making false or misleading statements in connection with securities transactions. Therefore, Defendants' arguments fail to meet the exceedingly high standard required to assert a lack of fair notice defense. *See* S*EC v. Gemstar-TV Guide Int'l, Inc.*, 401 F.3d 1031 (9th Cir. 2005) (holding that constitutional vagueness arguments should only be considered where a statute "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement"). Defendants cannot transform their purported ignorance of the law into a lack of due process claim. *See Jerman v. Carlisle*, 559 U.S. 573, 574 (2010) (defendants were not excused from their violation based on their "incorrect interpretation of the requirements of that statute"). In any event, courts in this district have made clear that Defendants' alleged misconduct here is a manipulative practice that violates the securities laws. *See, e.g., Beck*, 2024 WL 1626280, at *7 (holding that Defendant Beck engaged in a fraudulent scheme by recommending stocks without disclosing his intent sell).

## V. **DISMISSAL WITH PREJUDICE IS INAPPROPRIATE**

As shown above, the SEC's Complaint meets the pleading standards of Fed. R. Civ. P. 8 and 9. If the Court finds a deficiency in the Complaint, however, the SEC respectfully requests that the Court grant the SEC leave to amend its pleading. At most, the Defendants' Motion relates to curable pleading deficiencies, not irreparable flaws that cannot be fixed with an amended pleading. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (the Ninth Circuit permits amendments of complaints with "extreme liberality").

## VI. **CONCLUSION**

For the foregoing reasons, the SEC respectfully requests that the Court deny Defendants' Motion in its entirety. Should the Court grant the motion at bar in whole or in part, the SEC respectfully requests that it be granted leave to amend.

Dated:  October 30, 2024

/s/ Stephen T. Kam
STEPHEN T. KAM
Attorney for Plaintiff
Securities and Exchange Commission

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On October 30, 2024, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  October 30, 2024                    */s/ Stephen T. Kam*
                                            Stephen T. Kam

27

**SEC v. ANDREW LEFT, et al.**
**United States District Court—Central District of California**
**Case No. 2:24-cv-06311-SPG-RAO**

## SERVICE LIST

James W. Spertus
Lindsey Hay
Mario Hoang Nguyen
Spertus, Landes, & Umhofer LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
T: (310) 826-4700, F: (310) 826-4711
Email: jim@spertuslaw.com
**Attorneys for Defendants Andrew Left and Citron Capital, LLC**

28