**DYNAMIS LLP**
ERIC S. ROSEN (*pro hac vice*)
erosen@dynamisllp.com
MICHAEL B. HOMER (*pro hac vice*)
mhomer@dynamisllp.com
225 Franklin St., 26th Floor
Boston, Massachusetts 02110
(617) 802-9157

YUSEF AL-JARANI (Cal. Bar No. 351575)
yaljarani@dynamisllp.com
1100 Glendon Ave., 17th Floor
Los Angeles, California 90024
(213) 283-0685

AARON KATZ (*pro hac vice*)
akatz@aaronkatzlaw.com
399 Boylston Street, 6th Floor
Boston, MA 02116
(617) 915-6305

*Attorneys for Defendants Andrew Left and Citron Capital, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ANDREW LEFT and CITRON CAPITAL, LLC,

Defendants.

Case No. 2:24-cv-6311-SPG-JC

**DEFENDANTS' OPPOSITION TO THE DEPARTMENT OF JUSTICE'S MOTION TO INTERVENE AND TO STAY THE SEC CASE**

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL.**

Date: August 13, 2025
Time: 1:30 p.m.
Ctrm: 5C
Judge: Hon. Sherilyn Peace Garnett

## TABLE OF CONTENTS

INTRODUCTION ........ 1

RELEVANT FACTUAL BACKGROUND ........ 1

LEGAL STANDARDS ........ 5

A. DOJ's motion to intervene ........ 5

B. DOJ's motion to stay ........ 6

ARGUMENT ........ 7

I. DOJ's motion to intervene should be denied. ........ 7

II. DOJ's motion to stay this case should be denied. ........ 8

A. DOJ has failed to demonstrate that it will be "substantially prejudiced" in the absence of a stay ........ 8

B. A stay would substantially prejudice Mr. Left's rights. ........ 10

C. The SEC has not joined DOJ's motion, and a stay would undermine the SEC's interests. ........ 12

D. A stay will not conserve "judicial resources." ........ 13

E. A stay is not in the public's interest. ........ 13

CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Keating v. Office of Thrift Supervision*,
45 F.3d 322 (9th Cir. 1995) .......... 6, 8

*SEC v. ARVCO Rsch.*,
2013 WL 3779338 (D. Nev. Jul. 16, 2023) .......... 6, 10

*SEC v. Balwani*,
2019 WL 2491963 (N.D. Cal. Jun. 14, 2019) .......... 6

*SEC v. Chen,*
2016 WL 7444922 (C.D. Cal. Apr. 8, 2016) .......... 11, 13

*SEC v. Christian Stanley, Inc.*,
2012 WL 13009158 (C.D. Cal. Sept. 6, 2012) .......... 13

*SEC v. Cioffi*,
2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008) .......... 7

*SEC v. Fraser*,
2009 WL 1531854 (D. Ariz. June 1, 2009) .......... 6

*SEC v. Holcom*,
2013 WL 12073831 (S.D. Cal. Sept. 6, 2013) .......... 7, 8

*SEC v. Horwitz*,
2021 WL 2942231 (C.D. Cal. Jul. 12, 2021) .......... 11, 12

*SEC v. Kanodia*,
153 F. Supp. 3d 478 (D. Mass. 2015) .......... 7

*SEC v. Mazzo*,
2013 WL 812503 (C.D. Cal. Feb. 25, 2013) .......... 6, 7, 9, 10

*SEC v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008) .......... 10

*SEC v. O'Neill*, 98 F. Supp. 3d 219 (D. Mass. 2015) .......... 7

*SEC v. Rampoldi*, 2016 WL 11621801 (S.D. Cal. Oct. 16, 2016) .......... 8, 9

*SEC v. Sandifur*, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006) .......... 7

*SEC v. SHE Beverage Co., Inc.*, 2022 WL 17968832 (C.D. Cal. Dec. 22, 2022) .......... 12

**Statutes**

15 U.S.C. § 78ff .......... 4

15 U.S.C. § 78j(b) .......... 4

18 U.S.C. § 1348 .......... 4

**Rules**

Federal Rule of Civil Procedure 24(a) .......... 5, 7, 8

Federal Rule of Civil Procedure Rule 24(b) .......... 5

-iii-

24-CV-06311-SPG-JC

OPPOSITION TO MOTION TO INTERVENE AND STAY

## INTRODUCTION

Defendants Andrew Left and Citron Capital, LLC (together, "Mr. Left") respectfully submit this memorandum of law in opposition of the Department of Justice's ("DOJ") motion to intervene and stay discovery. The Court should reject DOJ's request to intervene. DOJ cannot intervene as of right, and DOJ provides no specific reasons why its intervention should be permitted. Moreover, even if the Court permits DOJ to intervene, it should reject DOJ's request for a blanket stay. Under Ninth Circuit law, the proponent of the stay request bears the burden of showing that a stay is necessary in the interests of justice. The principal factor in the interests-of-justice analysis is whether the absence of a stay will cause "substantial prejudice" to a party to the civil proceeding. Here, DOJ fails to articulate how allowing this matter to proceed in the normal course will cause *any* prejudice to a party, let alone "substantial prejudice," given that Mr. Left has not and does not intend to invoke his Fifth Amendment rights in response to any discovery requests he may receive from the SEC. DOJ likewise fails to show that any of the other interests-of-justice factors favor a blanket stay.

The SEC elected to sue Mr. Left—not the other way around. The pendency of the SEC's lawsuit significantly impairs Mr. Left's personal and professional life. Mr. Left has a constitutional right to defend himself against the SEC's charges. If the Court were to grant DOJ's request for a stay, Mr. Left's ability to obtain exoneration on the SEC's charges would be unnecessarily and unfairly delayed. DOJ has failed to carry its high burden to demonstrate the necessity of a stay.

## RELEVANT FACTUAL BACKGROUND

The SEC began investigating Mr. Left no later than [redacted]. *See* Ex. A [access request letter]. Originally, the SEC's investigation of Mr. Left was part of an industry-

wide "probe look[ing] at almost 30 short-selling firms and allies,"[1] targeting "a veritable who's who of the short-selling world."[2] *See also* Ex. B [SEC list of [REDACTED]]. The investigation was seeking to determine whether short-sellers were engaged in coordinated "short and distort" schemes, whereby short-sellers would collude with one another to inject into the market false negative information about companies and then profit from the drop in those companies' stock prices. *See* Ex. A [SEC referring to investigation as [REDACTED]].

The SEC launched its investigation in part to investigate an infamous short-and-distort campaign initiated by Quinton Mathews against Farmland Partners ("Farmland") in 2018.[3] Using the pseudonym "Rota Fortunae," Mathews published a short report claiming that Farmland was at risk of insolvency.[4] Mathews's short report, which he released on the investment website Seeking Alpha and on Twitter, caused Farmland's share price to drop 39% in a single day, destroying tens of millions of dollars in shareholder value. Mathews had amassed a substantial short position prior to releasing his report, and he covered his entire position a few hours after he

---

[1] Katia Porzecanski & Tom Schoenberg, *Vast DOJ Probe Looks at Almost 30 Short-Selling Firms and Allies*, BLOOMBERG (Feb. 4, 2022), https://www.bloomberg.com/news/articles/2022-02-04/vast-doj-probe-looks-at-almost-30-short-selling-firms-and-allies.

[2] Sam Klebanov, *The Big Short Seller Probe: Who Are the Investors on the DOJ's List?*, THE BUSINESS OF BUSINESS (Mar. 3, 2022), https://www.businessofbusiness.com/articles/the-big-short-seller-probe-who-are-the-investors-on-the-dojs-list/.

[3] *See* Justin Baer, *Short Sellers Upended a Small Farm-Real-Estate Company. This Is What It Looked Like.*, WALL ST. J. (Sept. 25, 2022), https://www.wsj.com/articles/short-sellers-upended-a-small-farm-real-estate-company-this-is-what-it-looked-like-11664076506.

[4] *Id.*

released the report.[5] A shareholder lawsuit against Mathews followed. Mathews settled the lawsuit, admitting that his report "contained inaccuracies and false allegations based on those inaccuracies."[6] Other than Mathews's fraudulent short attack on Farmland, however, the SEC's investigation did not find a single short-and-distort scheme, either by Mr. Left or any other short seller. And the SEC's investigation failed to find any evidence of unlawful collusion between short sellers.

In early 2021, the SEC changed the focus of its investigation of Mr. Left, presumably because the SEC realized that Mr. Left had not, in fact, engaged in any short-and-distort schemes, either in concert with other short-sellers or on his own. On February 1, 2021, the SEC issued Mr. Left a subpoena seeking [REDACTED] and [REDACTED] *See* Ex. C [2021 SEC subpoena].[7] The scope of the SEC's subpoena effectively commanded Mr. Left to produce every document or communication that he ever created or received concerning his entire involvement with the financial markets. On March 15, 2023, the SEC sent Mr. Left a second subpoena. *See* Ex. D [2023 subpoena]. This subpoena sought [REDACTED]. In response to the subpoenas, Mr. Left made seven productions to the SEC totaling nearly 100,000 pages. Mr. Left also made numerous additional productions

[5] *Id.*

[6] Rota Fortunae's Blog, "Mathews Settlement Press Release," SEEKING ALPHA (June 20, 2021), https://seekingalpha.com/instablog/47800059-rota-fortunae/5605955-mathews-settlement-press-release.

[7] The SEC actually sent him three subpoenas at that time: one to him personally, one to Citron Capital, and one to Citron Research. *See* Ex. E [production letter].

to DOJ, which issued grand jury subpoenas to him. The SEC and DOJ also collected millions of documents from third parties, via subpoenas and search warrants.

On August 25, 2023, the SEC issued Mr. Left a testimonial subpoena. Mr. Left welcomed the opportunity to explain his side of the story. Beginning in October 2023, the SEC conducted a three-day deposition of Mr. Left. Mr. Left answered every question the SEC's attorneys asked him, and he did not once invoke his Fifth Amendment right against self-incrimination. In addition to obtaining testimony from Mr. Left, the SEC took on-the-record testimony from nearly 10 other witnesses, and DOJ conducted dozens of unsworn interviews of potential witnesses and sources of information.

On July 25, 2024, a federal grand jury indicted Mr. Left, charging him with one count of securities fraud under 18 U.S.C. § 1348 and 17 counts of securities fraud under 15 U.S.C. §§ 78j(b) and 78ff. To be sure, the SEC's complaint overlaps significantly with the DOJ's indictment. Both are predicated on the same theory of fraud—that the opinions Mr. Left expressed on Twitter and in Citron's reports were not sincerely held, as demonstrated by the fact that Mr. Left either reduced or closed his positions in the stocks at issue (which include macro-cap stocks such as Nvidia, Tesla, and Facebook/Meta) shortly after publicly speaking. But the SEC's complaint includes a number of additional tickers—*see, e.g.*, VUZI, INO, and VEEV—that are not charged in the criminal indictment.

Neither the SEC nor DOJ has charged Mr. Left with making any false statements of fact about a company. Indeed, the majority of Mr. Left's publicly expressed opinions that the SEC and DOJ have charged as fraudulent were both incredibly accurate and incredibly prescient. For example, on November 20, 2018, Mr. Left opined on Twitter that Nvidia—which had just experienced a significant decline in share price—was grossly undervalued. If an investor had purchased $10,000 in Nvidia stock that day and held, that investor presently would be sitting on

over $400,000.

Notably, just months after the SEC charged Mr. Left, the SEC Investment Advisory Committee's Disclosure Subcommittee issued recommendations concerning the regulation of "finfluencers" (financial influencers) under existing laws. *See* Ex. F. The Committee concluded that:

> regulators have difficulty in applying these laws in a situation in which the finfluencer simply discloses security holdings in a company and easily profits off their followers predictable trading behavior. In such situations, *there is arguably no fraud* . . . .

This is, at most, what the SEC has alleged here. The SEC's claim is merely that Mr. Left profited off his followers' decisions to follow Mr. Left's stock recommendations. Mr. Left, of course, was not the only one who profited—his followers did as well.

Although the SEC has not yet begun producing discovery in this case, DOJ has produced extensive discovery in the parallel criminal case. DOJ has produced more than a million records, a significant portion of which DOJ obtained via the SEC's sharing of the materials that the SEC obtained via its administrative subpoenas.

## LEGAL STANDARDS

### A. DOJ's motion to intervene

A nonparty is entitled as of right to intervene in a case under Federal Rule of Civil Procedure 24(a) if either a federal statute provides an unconditional right to intervene or the nonparty "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." If a nonparty is not entitled to intervene under Rule 24(a), the court may permit the nonparty to intervene under Rule 24(b) if the nonparty has a "claim or defense that shares with the main action a common question of law or fact."

### B. DOJ's motion to stay

When parallel civil and criminal proceedings are pending at the same time, a

stay of the civil proceeding is the exception rather than the rule. As the Ninth Circuit has made clear, "[i]n the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable . . . ." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). When considering whether to stay a particular case, the Ninth Circuit has held that the "extent to which the defendant's fifth amendment rights are implicated is of paramount importance." *Id.* at 324 (citation omitted). In addition, courts should "generally consider" the following additional factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id*. at 324–25. The proponent of the stay has the burden of demonstrating that a stay is warranted pending resolution of a criminal proceeding. *See SEC v. ARVCO Rsch.*, No. 3:12-cv-00221-MMD-WGC, 2013 WL 3779338, *6 (D. Nev. Jul. 16, 2023).

As the *Keating* factors imply, it typically is *the defendant*—not DOJ—seeking to stay a parallel civil case. Courts treat with "disfavor . . . the Government's request for a stay when a branch of the Government . . . has brought the civil lawsuit that a U.S. Attorney's office is then seeking to stay." *SEC v. Mazzo*, No. SACV 12-1327-DOC(ANx), 2013 WL 812503, at *2 n.3 (C.D. Cal. Feb. 25, 2013) (denying request for a stay by the government without a "more specific request" that would allow the court to perform the "case-specific analysis required for a thoughtful decision"). In fact, the "vast majority of cases hold that such a stay is improper absent a showing of prejudice that cannot be remedied by anything other than a complete stay of the civil proceeding." *SEC v. Balwani*, No. 5:18-cv-01603-EJD, 2019 WL 2491963, at *2 (N.D. Cal. 2019) (quoting *SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2009 WL

1531854, at *3 (D. Ariz. June 1, 2009)); *see also SEC v. O'Neill*, 98 F. Supp. 3d 219, 221–22 (D. Mass. 2015) ("[E]xposing the government's case or testing witness recollections . . . are the risks that the government and the SEC run when they elect to pursue parallel investigations and prosecutions."); *Mazzo*, 2013 WL 812503, at *2; *SEC v. Kanodia*, 153 F. Supp. 3d 478, 481–82 (D. Mass. 2015) (citing *SEC v. Cioffi*, No. 08-CV-2457 (FB)(VVP), 2008 WL 4693320, at *1 (E.D.N.Y. Oct. 23, 2008) ("Courts are justifiably skeptical of blanket claims of prejudice by the government where—as here—the government is responsible for the simultaneous proceedings in the first place.")).

Put simply, "the government cannot elect to bring parallel civil and criminal proceedings and then complain about the effects." *Kanodia*, 153 F. Supp. 3d at 482; *see also O'Neill*, 98 F. Supp. 3d at 221; *SEC v. Sandifur*, No. C05-1631 C, 2006 WL 3692611, at *2 (W.D. Wash. Dec. 11, 2006) ("Although courts have been receptive to Government stay requests in civil cases brought by parties other than the Government[,] [c]ourts regularly deny stays when civil regulators have worked directly in concert with the criminal prosecutors during the investigation.").

## ARGUMENT

### I. DOJ's motion to intervene should be denied.

DOJ asserts that it is entitled to intervention as of right because it has a "distinct and discernable interest in intervening in order prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." Dkt. 41 at 6. This supposed "interest" is not one recognized by Rule 24(a). DOJ, moreover, does not cite a single case where DOJ was permitted to intervene as of right in a parallel SEC case. *See, e.g.*, *SEC v. Holcom*, No. 12-CV-1623-H (JMA), 2013 WL 12073831, at *2 (S.D. Cal. Sept. 6, 2013) (denying request to intervene as of right but permitting permissive intervention). Further, intervention as of right would be particularly inappropriate where DOJ's motion consists of generic

conclusions about harm from civil discovery. *See SEC v. Rampoldi*, 16-cv-2017-MMA(DHB), 2016 WL 11621801, *1 (S.D. Cal. 2016) (merely describing a "generalized interest" in "preventing" the criminal defendants from obtaining civil discovery "is insufficient to warrant intervention of right pursuant to Rule 24(a)").

Although DOJ is often granted permission to intervene for the limited purpose of moving to stay an SEC case, *Holcom*, 2013 WL 12073831 at *2, courts have likewise rejected DOJ attempts to intervene when DOJ fails to provide any detail as "for what purposes the United States wishes to intervene." *Rampoldi*, 2016 WL 11621801, at *1. As in *Rampoldi*, DOJ here offers virtually no reasoning for its request to intervene, stating only that there "are common questions of law and fact between this case and the criminal case because the same alleged fraud scheme forms the basis of both actions." *Id.* at 7. That may be true, but such generalized platitudes fail to demonstrate a compelling reason to permit DOJ to intervene in a case being prosecuted by a sister agency.

Because DOJ has offered nothing *specific* in its motion to justify intervention, its request to intervene should be denied.

## II. DOJ's motion to stay this case should be denied.

### A. DOJ has failed to demonstrate that it will be "substantially prejudiced" in the absence of a stay.

In *Keating*, the Ninth Circuit held that parallel proceedings are "unobjectionable" in the "absence of substantial prejudice." 45 F.3d at 324. Here, DOJ does not demonstrate that the government will be prejudiced, let alone substantially prejudiced, if this case is allowed to continue in the normal course. That is because no prejudice will occur.

First, even assuming civil discovery will enable Mr. Left to obtain some discovery that he might not be able to obtain in the parallel criminal matter, DOJ does not explain how that constitutes "substantial prejudice" within the meaning of

*Keating*. DOJ does not assert a concern that civil discovery will allow Mr. Left to manipulate or harass witnesses that DOJ might call in the criminal case; instead, DOJ's concern seems merely to be that access to civil discovery will help Mr. Left expose all the egregious factual errors in DOJ's criminal charges. A criminal trial, however, is supposed to be a search for truth. Thus, even if access to civil discovery might aid the search for truth in the criminal case, that merely demonstrates that the stay DOJ is requesting is *contrary* to the interests of justice. *See Rampoldi*, 2016 WL 11621801, at *2–3 (holding that "a blanket stay of all proceedings for an indeterminate amount of time" would not be in the "interests of justice," and rejecting criminal prosecutors' generalized assertion that allowing civil discovery to proceed while the parallel criminal case was pending "would be problematic").

Second, it is far from clear that civil discovery in this case will enable Mr. Left to obtain discovery that is both relevant to the criminal matter and not already disclosed by DOJ as part of criminal discovery. DOJ already has produced to Mr. Left's criminal defense team the vast majority of the SEC's documents related to this case. DOJ also has provided interview reports for dozens of potential trial witnesses. This probably is why DOJ's motion does not specifically describe what evidence Mr. Left might be able to obtain in civil discovery that he has not already received from DOJ as part of criminal discovery. Instead, DOJ's assertions are completely generic and conclusory. *See* Dkt. 41 at 9–10.

DOJ's general assertions of discovery-related "prejudice" are similar to ones that courts in the Ninth Circuit, including courts in this District, previously have rejected. In *SEC v. Mazzo*, for example, where the defendant was charged with criminal and civil securities fraud in parallel actions, criminal prosecutors from the U.S. Attorney's Office asked the court to "stay any depositions" in the SEC proceeding until the conclusion of the criminal trial. 2013 WL 812503, at *1. Judge Carter denied the request, rejecting the criminal prosecutors' argument that "a

criminal defendant should not be able to use civil discovery to get broader discovery than is available under the Federal Rules of Criminal Procedure." *Id.* at *2. Judge Carter held that the criminal prosecutors' "broad claims of possible abuse" of civil discovery were "not sufficient to support a stay" or "to deny [the defendants] one of the means by which they can defend themselves in this civil case." *Id.* Similarly, in *SEC v. ARVCO Capital Research*, the district court held that the government's parallel criminal prosecution would not "suffer prejudice" under *Keating* merely because, in the absence of a stay, the defendants in the civil proceeding would be able to "take a few remaining percipient witness depositions." 2013 WL 3779338, at *9 (D. Nev. 2013).

DOJ principally relies on *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1069–72 (C.D. Cal. 2008), for its argument that permitting Mr. Left to engage in civil discovery would be prejudicial to DOJ's prosecution of its criminal charges. DOJ, however, ignores the court's actual analysis in *Nicholas*. The court in *Nicholas* explained that the Federal Rules of Criminal Procedure's discovery process is "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment." *Id.* at 1071–72. Here, DOJ does not—and cannot plausibly—articulate a concern that Mr. Left would use the civil discovery process to suborn perjury, manufacture evidence, or harass or intimidate witnesses. And, because Mr. Left has not and will not invoke his Fifth Amendment rights in response to any valid discovery request (either in the civil case or the criminal case), any concerns about an unequal discovery "playing field" are not well founded.

**B. A stay would substantially prejudice Mr. Left's rights.**

Typically, it is the *defendant* who seeks a stay of the parallel civil matter so that the defendant is not faced with the Hobson's choice of sitting for a civil deposition or

invoking his Fifth Amendment rights and being subjected to an adverse inference instruction. *See, e.g.*, *SEC v. Horwitz*, No. 2:21-cv-02927-CAS-GJSx, 2021 WL 2942231, *3–4 (C.D. Cal. 2021) (citing cases and explaining that the "strongest case for deferring civil proceedings" until after completion of a parallel criminal case is when a defendant's Fifth Amendment rights are implicated). Here, that is not an issue. The SEC already deposed Mr. Left for three days, with Mr. Left answering every question put to him. If the SEC requests the opportunity to depose Mr. Left again, Mr. Left intends to answer every question put to him at that second deposition. *Cf. SEC v. Chen*, CV 15-07425 RGK (JPRx), 2016 WL 7444922, *2 (C.D. Cal. Apr. 8, 2016) (holding that the justification for a stay is "far weaker" when "no Fifth Amendment privilege is threatened.").

Mr. Left wants to obtain exoneration as soon as possible. A stay of this matter will substantially prejudice this fundamental interest. DOJ asserts that a stay will not last very long because the criminal trial is just "months away," following which "civil discovery can proceed unimpeded." Dkt. 41 at 10. But Mr. Left's criminal trial is scheduled to start in March 2026—*nine* months from now. Trial will likely last several weeks, meaning that the stay DOJ requests will last for nearly ten months at a minimum. This is not an inconsequential amount of time, particularly given that the events at issue in the SEC's complaint occurred more than seven years ago. The memories of potentially material witnesses already have begun to fade, and those memories will fade even more over the next ten months.

Concerns about material witnesses' fading memories are not abstract—they are confirmed by discovery that Mr. Left recently received. Important witnesses who testified in SEC depositions could not recall key details that concern allegations in the complaint and the Indictment. As just one example, the SEC alleges that in May 2019, Mr. Left committed securities fraud by tweeting that Beyond Meat, whose stock was trading for over $90 per share after having IPO'd just weeks earlier at $25 a share,

was overvalued. Dkt. 1, ¶¶ 118–24. Mr. Left's opinion was prescient—Beyond Meat is on the precipice of bankruptcy, and its stock is presently trading for less than $5. The SEC, however, has charged that Mr. Left's tweet was fraudulent because, according to the SEC, Mr. Left's opinion was not sincerely held. It turns out that [REDACTED] *See* Ex. G [disclosure letter]. [REDACTED] this is critical exculpatory evidence. DOJ recently attempted to interview [REDACTED] These events occurred just months ago. Any stay of discovery will only further exacerbate the fading memories of [REDACTED].[8]

**C. The SEC has not joined DOJ's motion, and a stay would undermine the SEC's interests.**

Given that Mr. Left has not and will not invoke his Fifth Amendment rights in response to any of the SEC's discovery requests, a stay would not benefit the SEC in any material way. To the contrary, a stay would undermine the SEC's "strong interest in proceeding expeditiously . . . ." *SEC v. SHE Beverage Co., Inc.*, No. 2:21-cv-73399-CAS (ASx), 2022 WL 17968832, *3–4 (C.D. Cal. Dec. 22, 2022) (citation omitted)

[8] It is unclear what DOJ means when they argue that Mr. Left has waived "any claim that such parallel proceedings are unduly burdensome." Dkt. 41 at 8. Mr. Left is not claiming that he is being unduly burdened. Rather, his claim is the opposite—that he will be prejudiced if the SEC case is stayed.

(denying stay because the "SEC has an interest in expeditious prosecution of the civil matter"); *Chen*, 2016 WL 7444922, *2 (same).[9] Tellingly, the SEC has not joined DOJ's request for a stay.

**D. A stay will not conserve "judicial resources."**

DOJ claims that a stay of the SEC's case will promote the "efficient use of judicial resources." This is highly unlikely.

*First*, the SEC's complaint includes several stocks that are not at issue in DOJ's criminal case. Thus, even if Mr. Left were convicted in the criminal case and the conviction upheld on appeal, the collateral estoppel effect of a conviction would not be conclusive of the SEC's entire complaint.

*Second*, Mr. Left is very unlikely to be convicted in the criminal case. DOJ's novel charges against Mr. Left are both factually unsupported and legally suspect. Even if DOJ is able to convince a jury that Mr. Left committed securities fraud when he tweeted factually accurate and prescient opinions about stocks such as Nvidia, Facebook, General Electric, and Tesla—opinions that, if followed, would have netted an investor massive returns far outpacing the S&P 500—such a jury verdict would be dead on arrival in the court of appeals.

**E. A stay is not in the public's interest.**

The SEC's complaint against Mr. Left is predicated on a novel theory of fraud that potentially impacts every person who exercises his or her First Amendment right to speak publicly—whether via research reports, 140-character Twitter posts, or other

[9] DOJ's citation to *SEC v. Christian Stanley, Inc.*, No. CV 11-7147 GHK, 2012 WL 13009158, at *4 (C.D. Cal. 2012) is misplaced. The quote chosen by the DOJ—"Where a party seeks *to intervene* solely for the purpose of requesting a stay in the proceedings, the prejudice of intervention on the original parties is minimal"—refers to the short, nonprejudicial delay that consideration of a stay motion causes, not the prejudicial delay that will be caused by a stay itself. *See id*. ("The only consequence of such intervention is that it allows us to entertain the motion to stay, which neither unduly delays the proceedings nor imposes unfair prejudice on the parties.").

social media sites—about stocks. There are no statutes, regulations, or even informal agency guidance that tell a "finfluencer" how long he or she must hold a position after publicly opining about the stock at issue, lest he or she be accused of fraud for conveying an opinion that was not "sincerely held." The SEC essentially is regulating through this enforcement action. Delaying this civil proceeding by ten months (and potentially more) means delaying the resolution of this important regulatory question.

## CONCLUSION

For all these reasons, the DOJ's motion to stay the SEC's case should be denied.

Dated: July 24, 2025　　　　　　　　　　Respectfully submitted,

DYNAMIS LLP

*/s/ Eric S. Rosen*
Eric S. Rosen (*pro hac vice*)
Michael B. Homer (*pro hac vice*)
Yusef Al-Jarani
Aaron Katz (*pro hac vice*)

*Attorneys for Defendants Andrew Left and Citron Capital, LLC*

**CERTIFICATE OF SERVICE AND COMPLIANCE**

No. 2:24-cv-6311-SPG-JC

I certify that on July 24, 2025, I served a redacted copy of this document on the Court and all parties by filing this document with the Clerk of the Court through the CM/ECF system, which will provide electronic notice and an electronic link to this document to all counsel of record.

I further certify, as counsel for Defendants Andrew Left and Citron Capital, LLC, that this memorandum of points and authorities contains 4,429 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 24, 2025

Respectfully submitted,

DYNAMIS LLP

*/s/ Yusef Al-Jarani*
Yusef Al-Jarani