UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>          v.<br><br>ANDREW LEFT; AND CITRON CAPITAL, LLC,<br><br>                    Defendants. | Case No. 2:24-cv-06311-SPG-JC<br><br>**ORDER GRANTING PROPOSED INTERVENOR UNITED STATES OF AMERICA'S MOTION TO INTERVENE AND STAY DISCOVERY [ECF NO. 41]** |

Before the Court is the Motion to Intervene and to Stay Discovery (ECF No. 41 ("Motion")) filed by the United States of America, by and through the United States Attorney for the Central District of California (the "Government"). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

## I.    BACKGROUND

The Court previously summarized the facts of this case in its order denying the motion to dismiss filed by Defendants Andrew Left ("Left") and Citron Capital, LLC ("Citron," or, together with Left, "Defendants"). (ECF No. 29 at 1-5). In brief, Plaintiff

Securities and Exchange Commission (the "SEC") alleges that, from approximately March 2018 to December 2020, Left posted written reports, emails, and tweets concerning 23 target companies on at least 26 occasions. (ECF No. 1 ("Complaint") ¶ 5). In these reports, Left exploited his platform at Citron by (1) establishing long or short exposure in the target companies; (2) issuing reports to readers leading them to believe that he had long or short exposure; (3) recommending his readers trade in the same direction and giving his readers a target price for the companies' stocks; and (4) taking the opposite approach of his recommendation, buying back stock after telling readers to sell, and vice versa. (*Id.* ¶ 6). Left's reports caused the prices of the target stocks to move by an average of more than 12%, enabling Left to generate approximately $20 million in profits. (*Id.* ¶¶ 5-6). To carry out the alleged scheme, Defendants engaged in various deceptive acts, including posting false investor letters portraying Citron as a successful hedge fund, creating anonymous websites to enhance the reach of their reports, and creating phony invoices for consulting services. (*Id.* ¶ 7). The SEC initiated this action (the "Civil Action") on July 26, 2024, asserting violations of Sections 10(b) and 20(a) of the Exchange Act of 1934 and Section 17(a) of the Securities Act of 1933. (*Id.* at 40-43).

On July 25, 2024, the Government initiated a separate criminal action against Left. *See United States v. Left*, 2:24-cr-00456-TJH (C.D. Cal.) (the "Criminal Action"). The criminal indictment charges defendant with one count of securities fraud in violation of 18 U.S.C. § 1348(1), seventeen counts of securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5, and one count of making a false statement to federal investigators, in violation of 18 U.S.C. § 1001(a)(2). Criminal Action, ECF No. 1 ("Indictment"). The Criminal Action relates to conduct occurring over a longer period than the Civil Action—March 2018 to October 2023—but involves only 17 target companies, as opposed to the 23 identified in the Civil Action. (Indictment ¶¶ 15, 18). Trial in the Criminal Action is currently set for March 17, 2026. *See* Criminal Action, ECF No. 49.

In the instant action, the Court denied Defendants' motion to dismiss the Complaint on April 22, 2025. (ECF No. 29). Following Defendants' Answer, (ECF No. 37), the

1  Court set a scheduling conference to be held on August 6, 2025, (ECF No. 38).  The
2  Government then filed the instant Motion on July 9, 2025, seeking to intervene and stay
3  this action throughout the pendency of the Criminal Action. (Mot.).  The SEC filed a notice
4  of non-opposition to the Motion on July 24, 2025.  (ECF No. 48).  On the same day,
5  Defendants filed an opposition to the Motion, (ECF No. 49 ("Opposition")), and the
6  Government filed a reply in support of the Motion on July 31, 2025, (ECF No. 54
7  ("Reply")).  On July 24, 2025, the Court vacated the scheduling conference pending
8  resolution of this Motion.  Discovery has not yet begun in this case.

## II. LEGAL STANDARD

### A. Motion to Intervene

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right where the potential intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter, impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  In the Ninth Circuit, the requirements for intervention as of right are: (1) the motion must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.  *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (citation omitted).  Proposed interveners must satisfy all criteria, and "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Alternatively, Rule 24(b) provides for permissive intervention by anyone who "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).  A proposed intervenor must show "(1) independent grounds for jurisdiction;

(2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry*, 587 F.3d at 955 (citation omitted). In exercising its discretion to permit intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### B. Motion to Stay

"The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). However, "a court may decide in its discretion to stay civil proceedings when the interests of justice seem to require such action." *Id.* (internal quotation marks, citations, and alterations omitted). A court's power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In exercising its discretion, a court should generally consider "the extent to which the defendant's fifth amendment rights are implicated," as well as the following factors: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Id.* at 324-25.

### III. DISCUSSION

### A. Motion to Intervene

The Government seeks to intervene in this case for the sole purpose of seeking a stay, either as of right or with the Court's permission. The Court agrees that the Government may intervene under Rule 24(b)(1)(B) for the limited purpose of requesting a

stay of this action. The Court therefore does not reach the question of whether the Government could intervene as of right.

The proposed intervention is procedurally proper under Rule 24(b). *See Perry*, 587 F.3d at 955. First, the Court has independent grounds for jurisdiction because the United States is intervening as a plaintiff and is not seeking to assert any new state law claims. *See SEC v. Holcom*, No. 12-CV-1623-H (JMA), 2013 WL 12073831, at *2 (S.D. Cal. Sept. 6, 2013) (finding independent jurisdiction where "the United States does not assert a new claim based on state law"); 28 U.S.C. § 1345 ("[D]istrict courts shall have original jurisdiction of all civil actions . . . commenced by the United States."). Second, this action is timely because the parties have not yet begun the discovery process. *See Holcom*, 2013 WL 1207381, at *2 ("The action is timely because the parties have engaged in little, if any, discovery."). And third, "there are many common questions of law and fact in the civil and criminal cases because the same" allegedly fraudulent reports, emails, and tweets "form the basis of both actions." *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1068 (C.D. Cal. 2008).

Next, the Court must determine whether the Government should be permitted to intervene, taking into account "whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Court finds that any prejudice here is minimal because the Government seeks to intervene solely for the purpose of requesting a stay in these proceedings. *See Bureerong v. Uvawas*, 167 F.R.D. 83, 86 (C.D. Cal. 1996). "Any undue delay or prejudice perceived here does not flow from the intervention, but instead from the proposed stay." *Nicholas*, 569 F. Supp. 2d at 1068. Accordingly, the Court GRANTS the Government's Motion to Intervene for the limited purpose of seeking a stay.

### B. Motion to Stay

Turning to the Motion to Stay, the Court will consider the factors enumerated in *Keating* to guide its exercise of discretion. *See Keating*, 45 F.3d at 324-25.

1. Plaintiff's Interests

First, the Court considers "the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay." *Id.* at 325. Here, the SEC has filed a notice of non-opposition to the Motion. (ECF No. 48). In the absence of any contrary argument from the SEC, the Court concludes that the delay would not cause any prejudice to the SEC. *See SEC v. Christian Stanley, Inc.*, No. CV 11-7147 GHK (MANx), 2012 WL 13009158, at *4 (C.D. Cal. Sept. 6, 2012). This factor therefore weighs in favor of a stay.

2. Burden on Defendant

Next, the Court considers the "burden which any particular aspect of the proceedings may impose on defendants." *Keating*, 45 F.3d at 325. As other courts have done, this Court will assume this factor is "aimed generally at considering the interests of the defendant," not merely the "burden" of simultaneous litigation.[1] *Christian Stanley*, 2012 WL 13009158, at *4.

Defendants argue that the length of the stay will cause significant prejudice because the criminal trial is not scheduled until March 2026. Because the events alleged here occurred several years ago, Defendants argue that memories have begun to fade and will fade even more over the coming months, hindering their defense. Defendants cite to one specific example of potential fading memories involving a possible exculpatory witness from the company Beyond Meat. (Opp. at 14-16).

The Court agrees that Defendants face some amount of prejudice from a stay. Being the target of an SEC enforcement action carries a number of costs, and Defendants have an interest in, as they put it, "obtain[ing] exoneration as soon as possible." (*Id.* at 15).

---

[1] Defendants argue that such motions are typically filed by the defendant rather than the Government. (Opp. at 14-15). While this was the case in *Keating*, the parties have identified numerous cases in which the Government, as an intervenor, sought to stay discovery in similar securities actions. As in the cases cited by the parties, the Court sees no reason why the framework for analysis should differ where it is the Government, rather than the defendant, that is seeking a stay.

1  Nevertheless, the prejudice here is not inordinate. The criminal trial is currently set for
2  March 2026, approximately seven months from the time of this order. During that time,
3  Defendants will be able to devote their full attention to the criminal matter—the more
4  serious of the charges against them. *See Nicholas*, 569 F. Supp. 2d at 1072-73 (noting that
5  "[t]he criminal case is also of greater relative importance to the named Defendants"
6  because they "face substantial terms of imprisonment if convicted," whereas the civil case
7  "carries only civil sanctions and monetary penalties"). Because of the overlapping facts
8  in the two cases, resolution of the criminal action is also likely to speed up the ultimate
9  resolution of this case following the stay. While fading memories are an issue in any stay,
10 the stay proposed here is relatively short in duration, and most witnesses are likely to
11 overlap between the two actions, ensuring that their memories remain fresh. Defendants'
12 example of the witness from Beyond Meat does little to aid their cause since, as they admit,
13 "[t]hese events occurred just months ago." (Opp. at 16). Thus, while this factor weighs
14 against a stay, Defendants have not demonstrated significant prejudice.

### 3. Judicial Resources

16  Third, the Court must consider "the convenience of the court in the management of
17 its cases, and the efficient use of judicial resources." *Keating*, 45 F.3d at 325. The
18 Government argues that a stay will greatly benefit the Court because of the potential for
19 collateral estoppel based on overlapping issues in the two proceedings. (Mot. at 11).
20 Defendants contend that a stay will not conserve judicial resources because "the SEC's
21 complaint includes several stocks that are not at issue in DOJ's criminal case." (Opp. at
22 17). Defendants also argue that they are "very unlikely" to be convicted and that any jury
23 verdict against them would be "dead on arrival in the court of appeals," so the collateral
24 estoppel effect will be minimal. (*Id.*).

25  The Court agrees with the Government that a stay has the potential to conserve
26 judicial resources through collateral estoppel. *See Emich Motors Corp. v. Gen. Motors
27 Corp.*, 340 U.S. 558, 569 (1951) ("It is well established that a prior criminal conviction
28 may work an estoppel in favor of the Government in a subsequent civil proceeding."). A

stay also carries the benefit of avoiding "inconsistent judgments if the Court and/or the jury is asked to resolve issues that are common between both actions." *Nicholas*, 569 F. Supp. 2d at 1070.  Further, a stay could "allow for the conservation of judicial resources since the completion of the criminal case may reduce discovery in the civil case." *H.M.H. v. United States*, No. 19-cv-1457 AJB (AHG), 2019 WL 7048761, at *2 (S.D. Cal. Dec. 23, 2019). This is true regardless of who prevails in the Criminal Action.  While Defendants are correct that not all issues in the two cases are identical, the cases overlap significantly, such that resolution of the Criminal Action is likely to resolve numerous issues in this case. Accordingly, the Court finds that this factor weighs in favor of a stay.

            4.        <u>Persons not Party to the Civil Litigation</u>

Next, the Court looks to "the interests of persons not parties to the civil litigation." *Keating*, 45 F.3d at 325.  The Government primarily argues that it will be prejudiced because Defendants will be able to leverage the more permissive civil discovery standard to undermine the restrictions on criminal discovery. (Mot. at 12).

The Court agrees.  As a non-party to this action, the Government has an interest "in preventing civil defendants from circumventing the limited discovery available in criminal proceedings by using tools of civil discovery." *Christian Stanley*, 2012 WL 13009158, at *6; *see also SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) ("The government had a discernable interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter.").  The Government's interest in staying civil discovery "is the strongest after the defendant is indicted and facing a parallel criminal proceeding," as Defendants are here. *Christian Stanley*, 2012 WL 13009158, at *6.  Staying discovery under such circumstances would "protect the integrity of the Government's investigation and ensure that the Defendants will not use the civil discovery processes to obtain discovery that is not authorized in a criminal case." *Bureerong*, 167 F.R.D. at 87 (internal quotation marks and citation omitted).

Defendants argue that the Government's arguments to this effect are generic and fail to identify any specific pieces of discovery that Defendants might be able to obtain. They cite to *SEC v. Mazzo* for the proposition that "broad claims of possible abuse" of civil discovery are insufficient to "support a stay" or "deny [the defendants] one of the means by which they can defend themselves in this civil case." 2013 WL 812503, at *2 (C.D. Cal. Feb. 25, 2013). However, *Mazzo* is distinguishable in that the defendant in that case was not a defendant in the parallel criminal proceeding. *See id.* at *1. The Court's calculus in evaluating prejudice to the Government was therefore quite different from that here.

Defendants also argue that the Government must make a showing of "substantial prejudice" to justify a stay under this factor. Defendants cite to *Keating*, which states that, "[i]n the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under our jurisprudence." *Keating*, 45 F.3d at 324 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980) (alterations omitted)). However, this language does not impose a requirement that an intervenor moving for a stay of simultaneous civil proceedings demonstrate substantial prejudice. The quoted language means only that, absent substantial prejudice, criminal and civil proceedings *may* proceed simultaneously. *See Dresser Indus., Inc.*, 628 F.2d at 1374 (discussing "general principles" of parallel proceedings, including that the government can initiate criminal and civil "proceedings either simultaneously or successively" (internal quotation marks and citation omitted)). Nothing in *Keating* limits the Court's inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. To the contrary, in the sentence immediately following the quote language, *Keating* states: "*Nevertheless*, a court may decide in its discretion to stay civil proceedings when the interests of justice seem to require such action." *Keating*, 45 F.3d at 324 (internal quotation marks, citation, and alterations omitted) (emphasis added). Thus, *Keating* does not "impose a 'substantial prejudice' standard that otherwise restrains the Court's 'exercise of judgment, which must weigh competing interests and maintain an even balance." *SEC*

*v. FAT Brands Inc.*, No. 2:24-cv-03913-MCS-AGR, 2024 WL 5319127, at *2 (C.D. Cal. Dec. 13, 2024) (quoting *Landis*, 299 U.S. at 254-55), *appeal docketed*, No. 25-94 (9th Cir. Jan. 6, 2025).

Because the Government's interests would be impaired by permitting Defendants to conduct civil discovery, the Court concludes that this factor weighs in favor of a stay.

### 5. Public Interest

Lastly, the Court must consider "the interest of the public in the pending civil and criminal litigation." *Keating*, 45 F.3d at 325. The public's interest "overlaps substantially with the Government's interest in preserving the integrity of its criminal proceeding or investigation." *Christian Stanley*, 2012 WL 13009158, at *6. "The public has a vital interest in the integrity of public markets, efficient punishment of wrongdoers, and deterrence of similar conduct by other corporate officers." *Nicholas*, 569 F. Supp. 2d at 1072.

Defendants argue that a stay is not in the public interest because the SEC "essentially is regulating through this enforcement action" and delaying this action means delaying the resolution of this regulatory question. (Opp. at 18). The Court disagrees. Resolving the Civil Action after the Criminal Action will benefit the public by avoiding the possibility of inconsistent determinations. A short delay until March 2026 will promote the public interest.

### 6. Defendants' Fifth Amendment Rights

In addition to the five factors, *Keating* states that courts "should consider the extent to which the defendant's fifth amendment rights are implicated." *Keating*, 45 F.3d at 324 (internal quotation marks and citation omitted). Because the Government, not Defendants, is seeking a stay, Defendants' Fifth Amendment rights are not implicated here. *See Christian Stanley*, 2012 WL 13009158, at *7 (finding this factor "inapplicable" under similar circumstances).

Having examined all the factors enumerated in *Keating*, the Court must now determine whether to exercise its discretion to stay these proceedings. While the Court has

not yet set a scheduling order in this case, the Criminal Action already has a trial date set for March 2026, and the Government "already has produced to Mr. Left's criminal defense team the vast majority of the SEC's documents related to this case." (Opp. at 13). With discovery not having started in this case, a stay will hardly interrupt the proceedings here. The brief stay through March 2026 will likely streamline proceedings by limiting the scope of any subsequent discovery in this action and potentially imposing collateral estoppel. Allowing parallel litigation to proceed, particularly at the current stage, would create the possibility of inconsistent judgments and would potentially enable Defendants to circumvent the limitations of criminal discovery. Accordingly, the Court concludes that a stay would appropriately balance "economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion and STAYS this Action, pending resolution of the Criminal Action against Defendants. The parties shall file a joint status update with the Court every six (6) months, apprising the Court of updates in the Criminal Action. Additionally, the parties shall file a joint status update within thirty (30) days of the resolution of the Criminal Action.

**IT IS SO ORDERED.**

DATED: August 19, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE